FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2011 MAY 25  P 2: 24

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| LERON PATRICE LATIMER<br>Apt 2<br>2905 13th Street, NW<br>Washington, DC 20009<br><br>      Plaintiff,<br><br>v.<br><br>WASHINGTON GAS LIGHT COMPANY<br><br>    SERVE:<br>    Luanne Gutermuth<br>    6801 Industrial Road<br>    Springfield, VA 22151<br><br>and<br><br>LONG TERM DISABILITY PLAN – MANAGEMENT<br>    EMPLOYEES PLAN<br><br>    SERVE:<br>    Arden Phillips, Esq.<br>    101 Constitution Ave., NW<br>    Washington, DC 20089<br><br>and<br><br>GROUP HOSPITALIZATION AND MEDICAL<br>    SERVICES, INC.<br>    d/b/a Care First Blue Cross Blue Shield<br><br>    SERVE:<br>    CT Corporation System<br>    4701 Cox Road, Suite 301<br>    Glen Allen, VA  23060-6802<br><br>and<br><br>METROPOLITAN LIFE INSURANCE COMPANY<br>    d/b/a MetLife | Civil No. 1:11CV571<br>(GBL/TRJ) |

|  |  |
|---|---|
| SERVE:<br>CT Corporation System<br>4701 Cox Road<br>Suite 301<br>Glen Allen, VA  23060-6802 | )<br>)<br>)<br>)<br>)<br>) |
| and | ) |
| GENWORTH LIFE INSURANCE COMPANY | )<br>) |
| SERVE:<br>Corporation Service Company<br>Bank of America Center, 16th Floor<br>1111 East Main Street<br>Richmond, VA  23219 | )<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| WILLIAM ZEIGLER,<br>10617 East Blue Sky Drive<br>Scottsdale, AZ 85262-8970 | )<br>)<br>)<br>) |
| and | )<br>) |
| LUANNE S. GUTERMUTH<br>3714 Camelot Dr<br>Annandale, VA 22003 | )<br>)<br>)<br>) |
| and | )<br>) |
| ANDREA ADAMS<br>7437 Gillingham Row<br>Alexandria, VA  22315 | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

# COMPLAINT FOR
# CIVIL ENFORCEMENT UNDER ERISA

## JURISDICTION AND VENUE

1.   Plaintiff's claims against Defendants are filed pursuant to the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA").

2

2. Plaintiff seeks an Order directing the defendants to fulfill disclosure requirements delineated in ERISA, e.g., by distributing Plan information by operation of law and by providing requested information. Further, Plaintiff seeks 29 USC §1132(c)(1)(B) penalties in the amount of $110 per day for each violation. Additionally, Plaintiff seeks 29 USC §1132(a)(1)(B) benefits from her long-term disability plan. Plaintiff seeks punitive damages for the fiduciary breaches she's suffered. Finally, Plaintiff seeks an award of attorney's fees and costs as provided in 29 U.S.C. §1132(g).

3. Venue and jurisdiction are, therefore, proper pursuant to 29 U.S.C. § 1132(f).

## PARTIES

4. Plaintiff is an adult currently residing in Washington, D.C.

5. Defendant Washington Gas is a public corporation doing business in the Commonwealth of Virginia.

6. Defendant CareFirst Blue Cross Blue Shield is a not-for profit corporation doing business in the Commonwealth of Virginia.

7. Defendant MetLife is a public corporation doing business in the Commonwealth of Virginia.

8. Defendant Genworth is a public corporation doing business in the Commonwealth of Virginia.

9. Defendant William Zeigler is an adult currently residing in Arizona.

10. Defendant Luanne S. Gutermuth is an adult currently residing in the Commonwealth of Virginia.

11. Defendant Andrea Adams is an adult currently residing in the Commonwealth of Virginia.

12. From information available, Defendant William Zeigler was the Plan Administrator for the Washington Gas Life Insurance Plan insured by Genworth (the "Life Insurance Plan"), the Washington Gas Health Care Plan (the "Health Care Plan"), and the Washington Gas Long Term Disability Plan (the "LTD Plan"), three employee welfare benefit plans established under ERISA and sponsored by Washington Gas, whose offices are in the Commonwealth of Virginia.

13. From information available, Defendant Luanne S. Gutermuth is the Plan Administrator for the Life Insurance Plan, the Health Care Plan, and the LTD Plan.

14. From information available, Defendant Andrea Adams is the Plan Administrator for a separate life insurance plan (the "Palliative Plan") set up by Washington Gas for Ms. Latimer, insured by MetLife.

15. Defendant Washington Gas is the Plan Sponsor of the Life Insurance Plan, the Palliative Plan, the Health Care Plan, and the LTD Plan. As a Plan Sponsor, Washington Gas is the default Plan Administrator if there is not one named.

## THE EMPLOYEE WELFARE BENEFIT PLANS

16. Washington Gas employed Ms. Latimer from September 1992 until her retirement in October 2008.

17. As part of her Washington Gas compensation, Ms. Latimer was provided with employee benefits that included (a) life insurance benefits, (b) health care coverage, and (c) long-term disability benefits.

18. Washington Gas, as the Plan Sponsor for all three categories of benefits, is responsible for ensuring accurate communication about the benefits to all participants. Frequently, specific responsibilities are delegated to Washington Gas staff, to Washington Gas

contractors, to a plan administrator, to a claims administrator; but Washington Gas has a fiduciary duty to the plans it sponsors and to the participants and beneficiaries of those plans.

19. At a specific point in time after her separation from service, Washington Gas provided Ms. Latimer with participation in the Palliative Plan.

## COUNT I

### Heath Care Plan Administrator's Breach of Fiduciary Duties for Failing to Provide a Sufficient SPD by Operation of Law

20. As an employee, Ms. Latimer was a Participant in the Health Care Plan. She remains a Participant in the Health Care Plan as a retiree.

21. During Ms. Latimer's tenure as a Participant, the Plan Administrator of the Health Care Plan failed to comply with ERISA's requirements regarding disclosing plan information.

22. Federal law requires specific plan information be disclosed at stated times or if certain events occur, "by operation of law." This first prong of disclosure generally involves the initial disclosure to a participant of the plan terms and involves subsequent disclosures when the plan terms have changed. By direct operation of law, the plan administrator must supply each new participant with a copy of the Summary Plan Description ("SPD"), which contain the plan terms. As time passes, changes made to the plan must be described to the participants in either an updated SPD or in a Summary of Material Modifications ("SMM").

23. The Plan Administrator of the Health Care Plan failed to comply with ERISA because the Plan Administrator did not consistently furnish plan documentation. The Plan documents must describe amounts for which the participant will be responsible. In attempting to describe the amounts paid for by the participant, the Plan document uses a formula of a

percentage of the Allowed Benefits (given other names over the years and in different documents). The amount of the Allowed Benefits is not provided, leaving the formula (of % of benefits) unhelpful. For example, Adult Preventative Physical Exams at an out-of-network provider are covered 70% of Allowed Benefit. If the physician charge is $200, the Plan's participant will not know the amount she is responsible for paying without knowing what portion of the $200 is "allowed" under the plan. If the allowed benefit were determinable as $100, then the participant would know that BCBS will pay $70 of the $200 and she would be responsible for $130. But the Plan does not define, describe or indicate how to obtain the Allowed Benefit amount. Without this variable defined, the benefit schedule fails to inform participants of their rights and obligations under the Plan. Further, the Allowed Benefit amount changes. The Allowed Benefit amount changes more often than the Plan documents are issued to the Participants. The Allowed Benefit amount changes within the Plan Year.

24.  By relying on a formula without clarifying the variables, the Plan Administrator fails to describe amounts for which the participant will be responsible. With this failure, the Plan Administrator of the Health Care Plan breached its fiduciary duties to Ms. Latimer, a Participant in the plans.

25.  When asked about this failure, Washington Gas said that the Claims Administrator, BCBS, prepared the content of the documents sent to Participants. To the extent that Washington Gas has delegated its responsibilities, the breach extends to BCBS, also a fiduciary.

## COUNT II

**Heath Care Plan Administrator's Failure to Provide a Sufficient SPD upon Request**

26.  Ms. Latimer realleges the allegations in paragraphs 20 and 21.

27. In addition to federal law requiring the disclosure of specific plan information by operation of law, federal law requires the disclosure of specific plan information upon a participant's request.

28. Because of Washington Gas's poor disclosure practices, Ms. Latimer sought legal counsel to assist in obtaining information concerning the means to access her benefits and was advised to request copies of plan documentation directly from Washington Gas and the Plan Administrator, if known. Latimer requested Health Care plan documents covering the period from 2005 to the present. This information was and continues to be critical to the ability of Ms. Latimer, as it is for all benefit plan participants, to understand (a) the level of benefit provided, (b) the method by which the benefits can be accessed, (c) the appeal procedure for adverse decisions, and (d) the cost-effectiveness of various benefit elections, which includes the election of HMO versus PPO coverage.

29. To date, the responses from Washington Gas to Ms. Latimer's requests have been neither timely nor complete.

30. By failing to provide the requested documents, WGL has violated the ERISA requirements, which are enforced by civil penalties provided for within 29 USC § 1132.

## COUNT III

**LTD Plan Administrator's Violation of ERISA for Failure to Provide a Sufficient SPD upon Request**

31. As an employee, Plaintiff was a Participant in the LTD Plan.

32. On February 13, 2006, Ms. Latimer became ill and was unable to work. Thus, she accessed her short-term disability ("STD") benefits, which was claims administered by MetLife.

33. Because the illness was not resolving as quickly as she had hoped, while out on STD benefits, Ms. Latimer realized she would need to access her long-term disability benefits. She asked for an LTD Plan SPD. In response, WGL sent her the Unum SPD by facsimile dated March 2006.

34. Ms. Latimer would later learn that Unum was not the claims administrator in March 2006 at the time she requested the SPD for the LTD Plan. MetLife's claims administration had taken over effective August 1, 2005. By March 2006, WGL staff would have known that MetLife was the claims administrator, not Unum, although Unum was listed in the SPD sent in response to Ms. Latimer's request in March 2006.

35. Ms. Latimer's STD benefit period was up in August, 2006, at which point she satisfied the LTD Plan elimination period. But the transition to LTD was not smooth. She was trying to apply for LTD benefits, but had not received the LTD application. During her inquiries of MetLife, she discussed the definition of disability with MetLife staff who referred her to WGL. In response to her request, by facsimile dated September 2006 WGL sent her some pages, approximately ten, of a MetLife certificate.

36. Ms. Latimer didn't receive the entire "wrap document" for the LTD plan until December 2006.

37. By failing to provide the requested documents, WGL has violated the ERISA requirements, which are enforced by civil penalties provided for within 29 USC § 1132.

## COUNT IV

**LTD Plan Administrator Breached his Fiduciary Duty by Failing to Provide a Summary of Material Modifications within the Statutory Requirements**

38. Plaintiff realleges paragraphs 30 through 35.

39.     Changes in the LTD Plan terms occurred in August 2005, including a claims administration change from Unum to MetLife.

40.     The Plan Administrator did not send out a Summary of Material Modifications by 210 days after the end of the plan year, a calendar year, within which these numerous changes in 2005 occurred.

41.     By failing to provide either an SMM or an SPD with the changes, the Plan Administrator breached his fiduciary duty to the Plan's Participants, which included Ms. Latimer.

## COUNT V

### LTD Plan Administrator's Breach of Fiduciary Duty for Failure to Treat Participants Consistently

42.     Plaintiff realleges paragraphs 30 through 35.

43.     Historically, WGL provided light duty work for an employee unable to perform the duties of his regular job.

44.     Prior to Ms. Latimer's application for LTD benefits, WGL changed the practice of providing light duty to requiring an application be filed for LTD benefits after 180 days of disability that would run for a 2-year regular job benefit period. The LTD benefits were presented as an improvement for the employees, and employees were encouraged to purchase the buy-up, which Ms. Latimer did purchase.

45.     When Ms. Latimer went out on disability, she relied on her long-term disability benefits being paid upon her being unable to do her regular job at Washington Gas. She wasn't aware that there had been more recent changes to the LTD Plan. By 2006, the LTD Plan had changed claims administrators and the LTD Plan was no longer being administered according to

those past Washington Gas communications. The extent of the changes were only apparent when MetLife heavily pushed her into a work rehab program during which she was encouraged to craft a resume for applying to work outside WGL.

46. The previous administration of the LTD plan did not involve pushing claimants to continually prove their disability, to apply for positions with other employers, or to force all participants to apply for Social Security Disability Insurance benefits.

47. By administering the Plan inconsistently among the Participants and by not notifying Participants of the change, Washington Gas breached its fiduciary duty to Ms. Latimer and all similarly situated disability participants.

## COUNT VI

### Claim for Long-Term Disability Benefits

48. Ms. Latimer realleges the allegations in paragraph 30 through 35. She received benefits for approximately 22 months, after a denial of benefits and subsequent appeal.

49. During the period MetLife paid Ms. Latimer, they demanded that she apply for SSDI benefits, an indication of their view of the strength of the benefit claim. Yet MetLife terminated the benefits they were paying her.

50. In connection to her disability benefits, Ms. Latimer experienced the Plan Administrator providing two different SPDs when the definition of disability was requested. She experienced the claims administrator feigning to assist her in securing non-Washington Gas work. She experienced MetLife being suspect of her eligibility and thus making her take extra steps to secure her benefits, while forcing her to apply for Social Security Disability Insurance benefits that has a higher bar for disability. These internal conflicting positions of the Plan confirmed for her that continuing an internal appeal would be futile. They had based the

termination upon an in-house paper review. MetLife never had her examined. She is looking to the court for the missing 2 months of benefits.

## COUNT VII

**Life Insurance Plan Administrator's Violation of ERISA for Failure to Provide a Sufficient SPD upon Request**

51. As an employee, Plaintiff was a Participant in the Life Insurance Plan administered by Genworth.

52. WGL had communicated to employees that the Life Insurance Plan was portable upon separation from service. In September 2008, in preparation for her nearing separation, Ms. Latimer asked WGL's retirement specialist about portability. Ms. Latimer was told that she would get all the paperwork she needed sent to her by mail.

53. In April 2009, after no paperwork came, she inquired again and was referred to Accenture, WGL's benefits consultant. Accenture didn't know what Ms. Latimer was talking about and referred her back to WGL.

54. After contacting WGL again, the WGL retirement specialist referred Latimer to Andrea Adams, Human Resources Director. Over the next two months, Latimer left a few messages at Ms. Adams' office but received no response until mid-June when Ms. Adams returned her call.

55. Ms. Adams explained that Ms. Latimer was not eligible to port her coverage. At the end of June, Ms. Adams sent Ms. Latimer a letter explaining what Ms. Adams had since learned about the portable coverage.

56. On July 15, 2009, Ms. Latimer requested the Life Insurance Plan documents.

57. By telephone July 24, 2009, Ms. Adams stated she was gathering and sending the requested documents. On August 14, 2009, Ms. Latimer sent an e-mail to Ms. Adams confirming the July 24, 2009 conversation. In September 2009, Ms. Latimer left unanswered phone messages for Ms. Adams. By letter dated December 8, 2009, Ms. Latimer again requested information regarding the Life Insurance.

58. None was forthcoming, although attempts at correspondence continued. By letter through legal counsel dated April 12, 2010, Ms. Latimer yet again requested information. Many documents were sent in response, none were applicable to the requested Life Insurance plan. In a letter by legal counsel dated July 8, 2010, Ms. Latimer appealed to the benefits counsel of WGL to please facilitate with the disclosure of the Life Insurance plan. No plan document was disclosed.

59. By letter by legal counsel dated August 13, 2010, Ms. Latimer wrote William Zeigler, Plan Administrator, to request the undisclosed information by offering to come to the Plan Administrator's office to review the documents on August 24, 2010 at 10 am. Although Mr. Zeigler did not respond, there were some Life Insurance plan documents available for review on August 24, 2010. They were not available as scheduled at 10 am, but they were available by 2 pm.

60. By failing to timely provide the requested documents, WGL has violated the ERISA requirements, which are enforced by civil penalties provided for within 29 USC § 1132.

## COUNT VIII

**Washington Gas's Breach of Fiduciary Duties in Failing to Continue Coverage Under Life Insurance**

61. Plaintiff realleges paragraphs 50 to 54.

62. Following approval of Ms. Latimer's claim for LTD benefits, Ms. Latimer was asked to confirm which employee benefits would be reinstated. She confirmed benefits including a reinstatement of her Genworth policy, which was never reinstated. She was left being unable to port the policy upon her separation from employment. By July 2009, Ms. Latimer was told that "until this was straightened out," Washington Gas would provide a unique life insurance policy through MetLife ("the Palliative Plan").

63. Washington Gas had not previously notified Ms. Latimer she was no longer a Participant in the Genworth Life Insurance Plan.

64. Washington Gas has breached its fiduciary duties by not continuing Ms. Latimer's participation in the Genworth life insurance plan.

## COUNT IX

### Palliative Plan Administrator's Breach of Fiduciary Duty By Failing to Provide SPD by Operation of Law

65. According to Washington Gas, Ms. Latimer is a participant in the Palliative Plan.

66. The Palliative Plan information has never been disclosed to Ms. Latimer, as is required by operation of law.

67. Ms. Latimer is still being deprived of proof of coverage as well as access to timely or sufficient information to effectively manage her benefit choices within the Palliative Plan. For example, she's never been provided a beneficiary selection form.

68. By failing to disclose plan information, the Plan Administrator has breached its fiduciary duty.

69. Because Washington Gas has stated that many actions are delegated to MetLife as the claims administrator, MetLife may also have breached its fiduciary duty.

## COUNT X

### Palliative Plan Administrator's Failure to Provide SPD upon Request

70. Ms. Latimer realleges the allegations in paragraph 62.

71. The second prong of ERISA's disclosure requirement is for the plan to provide certain plan information upon request. Because of Washington Gas's poor disclosure practices, Ms. Latimer requested copies of plan documentation for the Palliative Plan.

72. At first, Andrea Adams, Human Resources Director, and presumably Palliative Plan Administrator, told Ms. Latimer orally that Ms. Latimer would be receiving the information. Subsequently, Ms. Adams sent an e-mail to Ms. Latimer's legal counsel with an unsigned attachment in letter format, but not on letterhead. The content of the attachment was a statement that Ms. Latimer was a participant in the plan. There were no plan terms or benefit information included in the attachment. There was no plan number. The attachment stated it had been sent by regular mail.

73. The attachment didn't come through the mail until legal counsel specifically requested it be sent by mail. To date, Ms. Latimer has not received any plan information even when it was pointed out that a certificate should be provided to WGL from MetLife for the purpose of distributing to the insured.

74. By failing to provide the requested documents, WGL has violated the ERISA requirements, which are enforced by civil penalties provided for within 29 USC § 1132.

## RELIEF SOUGHT

75. By not disclosing plan documents, Washington Gas and the Plan Administrators have failed to comply with ERISA requirements for these plans for each plan year that SPDs,

SMMs and other plan documents were not timely disclosed on a per plan basis. These failures occurred whether the disclosure requirements were triggered by operation of law or by request.

76. This on-going pattern of a failure to disclose by Washington Gas's Plan Administrators across these plans does not support a commitment to ERISA compliance.

Plaintiff requests that this Court enter an Order declaring the following:

1. That Plaintiff is entitled to these documents.

2. Because the Plan Administrator has not supplied the documents, or has not supplied them in a timely fashion, that Plaintiff is entitled to civil penalties of $110 from the day of each failure, for each plan for each plan year involved.

3. That Plaintiff is entitled to payment of attorney's fees and costs.

4. That Plaintiff is entitled to any other relief as the court deems proper.

Respectfully submitted,

*L. Patrice Latimer*
By Counsel

Juliet Cheheyl Purll, VSB #46418
**Purll Law, LLC**
2009 N. 14th St. #202
Arlington, VA 22201-2322
v. 703.660.1020
f. 202.403.3361
JPurll@PurllLaw.com