IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LERON PATRICE LATIMER,          )
                                )
              Plaintiff,        )
                                )
       v.                       )     Civil Action No. 1:11cv571 (GBL/TRJ)
                                )
WASHINGTON GAS LIGHT            )
COMPANY, *et al.*,              )
                                )
              Defendants.       )
                                )
_____    )


## MEMORANDUM OPINION


This matter is before the Court on Defendants Washington Gas Light Company ("WGL"), Long Term Disability Plan-Management Employee Plan, William Zeigler, Luanne S. Gutermuth, and Andrea Adams's Motion for Summary Judgment and Motion for Relief from Judgment. This case, brought under the federal Employees Retirement Income Security Act ("ERISA"), is about the failure of an employer, as a benefits plan administrator and fiduciary, to provide benefits plan information to a retired employee, as a participant in those plans.

There are eight issues before the Court. The first issue is whether the Court should grant Defendants' Motion for Summary Judgment on Plaintiff's claim for Defendants' failure to provide a sufficient summary plan description ("SPD") for her life insurance plan upon request, Count 7 of the Amended Complaint, and either dismiss this claim or impose no penalty. The Court finds no genuine issue of material fact as to Defendants' failure to make timely disclosure

1

of life insurance plan information. Additionally, the Court concludes that Defendants' violation of ERISA's disclosure requirements warrants the maximum penalty under section 502(c). Therefore, the Court grants in part and denies in part Defendants' Motion for Summary Judgment as to Count 7. Judgment is entered in favor of Plaintiff for Defendants' delayed response in an amount of $37,510, $110 per day for 341 total days Defendants delayed in providing the required disclosure after the 30-day period permitted under ERISA for each request.

The second issue is whether the Court should grant Defendants' Motion for Summary Judgment on Plaintiff's claim for Defendants' failure to provide a palliative plan SPD upon request, Count 10 of the Amended Complaint, and dismiss this claim as a matter of law. The Court grants Defendants' Motion for Summary Judgment as to Count 10 because there is no record evidence demonstrating that Plaintiff was enrolled in any MetLife "palliative plan" separate from the life insurance plan. Plaintiff already recovers for Defendants' untimely response to requests for information about the MetLife life insurance plan on Count 7 and cannot recover separately on Count 10. Therefore, the Court dismisses Count 10 as a matter of law.

The third issue is whether the Court should grant Defendants' Motion for Summary Judgment on Plaintiff's claim for Defendants' failure to provide a sufficient long-term disability ("LTD") plan SPD upon request, Count 3 of the Amended Complaint. The Court grants Defendants' Motion for Summary Judgment as to Count 3 because, while the record evidence suggests that Plaintiff made some form of request for LTD plan information around March 2006 and September 2006, Plaintiff fails to present any evidence that any of her requests for this information was submitted to Defendants in writing. Without evidence of written requests for

plan information, Plaintiff fails to present a genuine issue of material fact as to whether Defendants are liable for any untimely response to her requests.

The fourth issue is whether the Court should grant Defendants' Motion for Summary Judgment on Plaintiff's claim for Defendants' failure to provide a sufficient health care plan SPD upon request, Count 2 of the Amended Complaint, and dismiss this claim as a matter of law. The record indicates that Plaintiff submitted written requests for health care plan SPDs on March 30, April 7, and April 12, 2010. Defendants disclosed a health care plan SPD to Plaintiff on April 5, 2010, but it was unclear whether this SPD was the latest updated SPD for the plan, as required under ERISA. For this reason, the Court denies Defendants' Motion for Summary Judgment as to Count 2 and reserves for trial the question of whether the SPD provided on April 5, 2010, was the latest updated health care plan SPD.

The fifth issue is whether the Court should grant Defendants' Motion for Summary Judgment on Plaintiff's claim for Defendants' breach of fiduciary duty to provide a summary of material modifications ("SMM") for the LTD plan. The record evidence indicates that a number of material changes were made to WGL's LTD insurance plan in or around August 2005, but Defendants failed to issue an SMM at that time. Defendants did not issue plan documentation reflecting the changes to Plaintiff until August and December 2006, and the disclosures in August were incomplete documents. The Court denies Defendants' Motion for Summary Judgment as to Count 4 because the 2006 disclosures of modifications to the LTD plan adopted in 2005 were untimely under ERISA, and a genuine issue of material fact remains as to whether Plaintiff was prejudiced by the delayed disclosure.

The sixth issue is whether the Court should grant Defendants' Motion for Summary Judgment on Plaintiff's claim for Defendants' breach of fiduciary duty to treat LTD plan

participants consistently, Count 5 of the Amended Complaint. Plaintiff alleges that Defendants

failed to treat LTD plan participants consistently with respect to requirements imposed on

participants using LTD benefits and the expiration of coverage upon termination of an employee

during the gap between short-term disability ("STD") and LTD coverage. The Court grants

Defendants' Motion for Summary Judgment as to Count 5 because there is no admissible

evidence in the record indicating inconsistencies in how Plaintiff was treated versus how other

similarly situated employees were treated or how Defendants represented to Plaintiff she would

be treated with respect to administration of the LTD plan.

The seventh issue is whether the Court should grant Defendants' Motion for Summary

Judgment on Plaintiff's claim for Defendant WGL's breach of fiduciary duty to continue

Plaintiff's life insurance coverage, Count 8 of the Amended Complaint. The Court grants

Defendants' Motion for Summary Judgment as to Count 8 because Plaintiff fails to identify a

duty that was breached by Defendant WGL or present a genuine dispute of material fact as to

whether Defendant WGL breached any duty owed to Plaintiff to maintain her Genworth life

insurance coverage after her termination.

The eighth issue is whether the Court should grant Defendants' Motion for Summary

Judgment on Plaintiff's claim for Defendants' breach of fiduciary duty to provide her with a

MetLife life insurance plan SPD by operation of law, Count 9 of the Amended Complaint. The

record evidence demonstrates that Plaintiff was enrolled in a life insurance plan with MetLife in

July 2007 but was not provided with an SPD for this plan until well over two years later.

However, the Court grants Defendants' Motion for Summary Judgment as to Count 9 because

there is no genuine issue of material fact as to whether Plaintiff was prejudiced by any untimely

disclosure of the life insurance plan SPD by Defendants.

## I.    BACKGROUND

Leron Patrice Latimer was employed with Washington Gas Light Company ("WGL") from September 1992 until her retirement in October 2008. As a WGL employee, Latimer was a participant in several employee benefit plans, including health care, long-term disability ("LTD"), and life insurance plans. WGL was the plan sponsor of these benefits plans and the plan fiduciary responsible for reporting and disclosure. As Vice-President of Human Resources, William Zeigler was the designated plan administrator of the benefits plans from February 1, 2004, through December 14, 2006. From December 15, 2006, through November 4, 2008, the Health and Welfare Benefit Plan Committee was the plan administrator, and Zeigler was the plan administrator again from November 5, 2008, through September 30, 2010. As Vice-President of Human Resources, Luanne Gutermuth has served as the plan administrator from October 1, 2010, through the current date.

In or around August 2005, certain changes were made to the LTD benefit plan, including a change in service providers from UNUM to MetLife and changes in the level of benefits and in the definition of "disability."[1] See Pl.'s Ex. K, at 4; Pl.'s Ex. T, at 31, 34. February 10, 2006, was

---

[1] The definition of "disability" determines the types of sickness or injury that will be covered by the insurer. The UNUM plan defines "disability" as an injury or sickness suffered by the participant that

> requires the regular care and attendance of a doctor and: (1) [t]he employee is unable to perform each of the material and substantial duties of his/her regular job held prior to such disability and you have 20% or more loss in your monthly earnings due to the same disability during the first 24 months of any one period of disability; and (2) [t]he employee is unable to perform any occupation for which he/she is, or may become, reasonably qualified by training, education, or experience after the first 24 months of payments.

Pl.'s Ex. K at 4. The MetLife plan defines "disability" as an injury or sickness for which the participant receives "Appropriate Care and Treatment," as defined by the plan and the participant "compl[ies] with the requirements of such treatment; and [due to such injury or sickness the participant is] unable to earn:"

> during the Elimination Period [following the day the participant becomes disabled, during which benefits are not paid,] and the next 24 months of Sickness or accidental injury, more than 80% of Your Predisability Earnings at Your Own Occupation from any

the last day Latimer worked at WGL. Due to an illness, she applied for and received short-term disability ("STD") benefits from MetLife and took a period of leave from February 13, 2006, to August 12, 2006. Latimer's initial application for LTD benefits was denied in November 2006. WGL terminated Latimer in February of 2007, after she failed to return to work following the initial denial of LTD benefits in November 2006.

Latimer made at least two requests for summary plan descriptions ("SPDs") of the LTD plan to WGL in 2006. In March 2006, she was provided with an SPD for the LTD plan that did not reflect the changes made to the plan during the 2005 plan year. Pl.'s Ex. K. In September 2006, she received portions of an SPD that reflected some of the changes but were missing many pages. Pl.'s Exs. L, T. Portions of the SPD sent to Latimer on September 15 included the updated definition of "disability" and benefits formula. Pl.'s Ex. T, at 31, 34. Another plan document was provided to Latimer in December 2006 that reflected the change in insurers from UNUM to MetLife. Defs.' Ex. 7, 8.

WGL provides life insurance to management employees through Genworth Financial and MetLife. Active management employees are required to first apply for individual life insurance with Genworth and, if the employee does not meet Genworth's underwriting standards, the management employee is covered under a group life insurance policy issued by MetLife. Defs.' Ex. 4 (Aff. of Andrea Adams), at ¶¶ 5-7.

WGL has produced copies of two letters from Genworth to Latimer dated March 15, 2007, and April 17, 2007, which followed the removal of Latimer from employment with WGL.

---

employer in Your Local Economy; and after such period, more than 60% of your Predisability Earnings from any employer in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience.
Pl.'s Ex. T at 34.

Defs.' Ex. 4, at Attach. B. The first letter notifies Latimer that her life insurance premiums would no longer be paid by WGL and that she could continue coverage by submitting payments directly to Genworth. This letter further advises that a premium payment would need to be remitted to Genworth by April 15, 2007, to avoid a lapse in coverage. The second letter notifies Latimer that her life insurance coverage terminated on April 15 due to non-payment of premiums. Latimer, in her affidavit, denies that she received either of these letters.

MetLife approved Latimer's appeal of the initial denial of LTD coverage in May 2007 and coverage was applied retroactively to August 12, 2006. WGL reinstated Latimer to inactive status upon the approval of her LTD benefits, and she was permitted to elect other employee benefits, including life insurance and medical benefits. *See* Defs.' Ex. 4, at Attach. D. After Latimer elected life insurance, WGL attempted to re-enroll her with Genworth and submitted a premium payment to Genworth, but the insurer rejected the payment. WGL subsequently placed Latimer under the group life insurance policy issued by MetLife.

Latimer's LTD coverage ended on June 28, 2008, and she retired from WGL under the disability retirement provisions of the WGL pension plan on November 30, 2008.

Latimer sent letters to Andrea Adams, WGL's Director of Labor Relations and HR Strategy, requesting life insurance SPDs on July 16 and December 8, 2009. Pl.'s Exs. C, D. WGL failed to respond to these requests. On March 30, 2010, Latimer emailed a request to Adams and Zeigler for "a copy of all Summary Plan Descriptions (SPDs) regarding management (active and retired) employee medical benefits issued from January 2005 to the present." Pl.'s Ex. P. In an email dated April 7, 2010, Latimer acknowledged receipt of a CareFirst Blue Cross Blue Shield ("CareFirst") PPO medical plan SPD effective as of January 1, 2006, and asked questions about whether there were other, more recent SPDs responsive to her request. Pl.'s Ex.

B, at Attach. 8. On April 12, 2010, Latimer's attorney sent a letter to WGL demanding disclosure of the requested life insurance and medical insurance plan information. Pl.'s Ex. B, at Attach. 5. WGL responded by sending Latimer health care and life insurance plan documentation and other benefits-related documents via email on April 15, 2010. Defs.' Ex. 6; Pl.'s Ex. U. Latimer made another request for health care SPDs and plan documents in a letter to WGL on February 7, 2011, and WGL responded with the plan documentation on March 1, 2011. Pl.'s Ex. Q.

On May 25, 2011, Latimer, by counsel, filed her Complaint in this Court against WGL, Zeigler, Gutermuth, Adams, Long-Term Disability Plan-Management Employees Plan, Genworth Financial, and MetLife Insurance Company, alleging various violations of disclosure requirements and breach of fiduciary duties under ERISA. MetLife was voluntarily dismissed, and an Amended Complaint was filed on July 27, 2011, with CareFirst now named as a defendant. On October 4, 2011, Motions to Dismiss by Genworth, CareFirst, and the WGL defendants were granted. All claims against Genworth and CareFirst were dismissed with prejudice. Counts 2, 3, 4, 5, 7, 8, 9, and 10 remain against the WGL defendants:

1. In Count 7, Latimer seeks recovery for Defendants' failure to provide her with a sufficient life insurance SPD upon request.

2. In Count 10, Latimer seeks recovery for Defendants' failure to provide her with a palliative plan SPD upon request.

3. In Count 3, Latimer seeks recovery for Defendants' failure to provide a sufficient long-term disability ("LTD") SPD upon request.

4. In Count 2, Latimer seeks recovery for Defendants' failure to provide her with a sufficient health care SPD upon request.

5. In Count 4, Latimer seeks recovery for the Defendants' breach of fiduciary duties in failing to provide her with a LTD summary of material modifications ("SMM") as required by ERISA.

6. In Count 5, Latimer seeks recovery for the Defendants' breach of fiduciary duties in failing "to treat participants consistently" with respect to their administration of the LTD plan.

7. In Count 8, Latimer seeks recovery for Defendant WGL's breach of fiduciary duties in its failure to continue Plaintiff's life insurance coverage with Genworth Financial.

8. In Count 9, Latimer seeks recovery for Defendants' breach of fiduciary duties in failing to provide her with a palliative plan SPD by operation of law, presumably under section 104 of ERISA.

On November 21, 2011, the Court granted Plaintiff's counsel leave to withdraw without substitute, and Plaintiff now proceeds *pro se*.

On January 13, 2012, Defendants filed their Motion for Summary Judgment on all counts, which was fully briefed and argued on February 16, 2012. On February 21, 2012, the Court granted in part and denied in part Defendants' Motion for Summary Judgment. First, the Court granted the motion as to Counts 3, 5, 8, 9, and 10 of the Amended Complaint and dismissed these counts. Second, the Court entered judgment in favor of Plaintiff on Count 7 and awarded $37,510 in statutory penalties. Finally, the Court denied the motion as to Counts 2 and 4. On March 5, 2012, Defendants filed their Motion for Relief from Judgment as to the Court's ruling on Count 7 and waived oral argument. On June 7, 2012, the Court denied Defendants' motion. The Court sets forth the reasons for its ruling on Defendants' Motion for Summary Judgment and Motion for Relief from Judgment below.

9

## II.   DISCUSSION

### A. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 248. Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate

specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## B. ANALYSIS

### 1. Counts 2, 3, 7, and 10

The Court denies Defendants' Motion for Summary Judgment as to Count 2 and grants the motion as to Counts 3 and 10, and grants in part and denies in part the motion as to Count 7.

Section 104(b) of the Employee Retirement Income Security Act of 1974 ("ERISA") requires benefits plan administrators to provide "a copy of the latest updated summary plan description" ("SPD") to plan participants within 90 days of becoming a participant and upon written request from a participant. 29 U.S.C. § 1024(b)(1)(A), (b)(4) (2009). Section 3 of ERISA defines "participant" as:

> employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). *See also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) ("former employees who 'have . . . a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits" as participants).

An SPD includes a description or summary of the benefits provided under the plan. 29 U.S.C. § 1022. ERISA requires that the SPD "be sufficiently accurate and comprehensive to reasonably apprise [plan] participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). *See also* 29 U.S.C. § 1022(b); 29 C.F.R. § 2520.102-3 (listing information SPD is required to contain). United States Department of Labor ("DOL") regulations implementing ERISA require the SPD to include "[t]he plan's requirements respecting eligibility

for participation and for benefits" as well as "a description or summary of the benefits." 29

C.F.R. § 2520.102-3(j) (2011).[2] "The [SPD] must accurately reflect the contents of the plans as

of the date not earlier than 120 days prior to the date such summary plan description is

disclosed." 29 C.F.R. § 2520.102-3.

Section 502(c)(1) of ERISA provides for specific civil penalties against plan

administrators who fail or refuse to comply with requests for such information from plan

participants within 30 days of the request. 29 U.S.C. § 1132(c)(1). The court may impose a

penalty in the amount of up to $110 a day from the date of such failure or refusal. *Id.; see also* 29

C.F.R. § 2575.502c-1 (increasing penalty from $100 to $110 per day delayed). "[T]he amount of

the statutory penalty to be imposed, if any, is left to the discretion of the court." *Brooks v.*

*Metrica, Inc.*, 1 F. Supp. 2d 559, 568 (E.D. Va. 1998) (citing *Faircloth v. Lundy Packing Co.*, 91

F.3d 648, 659 (4th Cir. 1996)).

"Two factors generally guide [the] district court's discretion: prejudice to the plaintiff and

the nature of the administrator's conduct in responding to the participant's request." *Davis v.*

*Featherstone*, 97 F.3d 734, 738 (4th Cir. 1996). Even prejudicial harms such as "frustration,

trouble, and expense," including "the trouble and expense of engaging an attorney" to induce the

defendant's compliance, are "relevant factors for a district court to consider in deciding whether

to impose a penalty." *Davis*, 97 F.3d at 738, *quoted in Brooks*, 1 F. Supp. 2d at 569. However,

---

[2] Specifically, the SPD of a group health plan must include descriptions of "the rights and obligations of participants and beneficiaries with respect to continuation coverage." 29 C.F.R. § 2520.102-3(o). The SPD must also include "any cost-sharing provisions, including premiums, deductibles, coinsurance, and copayment amounts for which the participant or beneficiary will be responsible, [and] any annual or lifetime caps or other limits on benefits under the plan[.]" 29 C.F.R. § 2520.102-3(j)(3). However, "[i]n the case of a welfare plan providing extensive schedules of benefits (a group health plan, for example)," DOL regulations require "only a general description of such benefits . . . if reference is made to detailed schedules of benefits which are available without cost to any participant or beneficiary who so requests." 29 C.F.R. § 2520.102-3(j)(2).

"[t]he purpose of § 502(c)(1) is not to compensate participants for injuries, but to punish noncompliance with ERISA[,]" *Faircloth*, 91 F.3d at 659, and "to provide plan administrators with an incentive to meet requests for information in a timely fashion," *Davis*, 97 F.3d at 738, citing *Porcellini v. Strassheim Printing Co., Inc.*, 578 F. Supp. 605, 614 (E.D. Pa. 1983). For this reason, prejudice to the participant requesting plan documents, while "a pertinent factor for the district court to consider, . . . is not a prerequisite to imposing a penalty." *Davis*, 97 F.3d at 738; *see also Faircloth*, 91 F.3d at 659. In *Porcellini v. Strassheim Printing Co.*, 578 F. Supp. 605, 614 (E.D. Pa. 1983), an opinion that has become influential on the issue of section 502(c) penalties, the United States District Court for the Eastern District of Pennsylvania determined that, given the purpose of the provision in inducing compliance, "the *primary* focus of a court in assessing damages under that section should be the conduct of the administrator upon whom the liability is personally imposed." 578 F. Supp. at 614 (emphasis added). Thus, "to recover statutory damages a plaintiff need only show that the defendant did not comply with the statute." *Brooks*, 1 F. Supp. 2d at 568.

Additionally, under section 502(c)(1), each "fail[ure] or refus[al] to comply with a request for any information [the] administrator is required . . . to furnish to a participant or beneficiary . . . with respect to any single participant or beneficiary[] shall be treated as a separate violation." 29 U.S.C. § 1132(c)(1).

In four separate counts, Plaintiff sets forth claims for violations of ERISA § 104(b) and seeks an award of penalties under § 502(c). The Court grants in part and denies in part Defendants' Motion for Summary Judgment and denies Defendants' Motion for Relief from Judgment as to Count 7. There is no genuine issue of material fact concerning Defendants' violation of ERISA § 104(b) with respect to Plaintiff's requests for life insurance plan

documentation, and the Court concludes that the maximum statutory penalty is appropriate. The Court grants Defendants' Motion for Summary Judgment as to Count 10 because Plaintiff was not a participant in any MetLife "palliative plan" separate from her group life insurance coverage. The Court grants Defendants' Motion for Summary Judgment as to Count 3 because Plaintiff fails to present a genuine issue of material fact as to whether Defendants' response to Plaintiff's requests for long-term disability ("LTD") SPDs was timely and adequate under ERISA. The Court denies Defendants' Motion for Summary Judgment as to Count 2 because there remains a genuine factual issue as to whether Defendants made a proper response to Plaintiff's written requests for health care SPDs submitted in March and April of 2010.

### a. Count 7: Life Insurance Plan Administrator's Failure to Provide a Sufficient SPD upon Request

In Count 7 of her Amended Complaint, Plaintiff seeks recovery for Defendants' failure to provide her with a sufficient life insurance SPD upon request. There is no genuine issue of material fact as to whether Defendants failed to timely respond to Plaintiff's written requests for life insurance SPDs in 2009. In 2009, Plaintiff was a participant in the MetLife group life insurance plan for which Defendant Zeigler was the plan administrator and Defendant WGL was the plan fiduciary responsible for reporting and disclosure. In two letters dated July 16 and December 8, 2009, Plaintiff submitted to Defendant WGL written requests for life insurance SPDs. Pl.'s Exs. C & D. Defendants did not send Plaintiff life insurance plan documentation responsive to her requests until April 15, 2010, after receiving a letter from Plaintiff's counsel demanding these and other benefits-related documents on April 12, 2010. On April 15, 2010, Defendants sent Plaintiff a document providing information on her MetLife group life insurance plan. Pl.'s Ex. U.

According to Plaintiff, the documentation provided on April 15, 2010, was both untimely and incomplete and therefore Defendants have continued to fail to adequately respond to Plaintiff's requests. Pl.'s Ex. B (Aff. of Latimer), at ¶ 38. In her Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiff argues that Defendants failed to satisfy ERISA disclosure requirements by failing to provide sufficient information "concerning the benefits of Genworth coverage[.]" Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 23. Plaintiff does not dispute the sufficiency of information provided about her MetLife coverage on April 15, 2010.

Plaintiff was not entitled, under ERISA, to receive information from Defendants regarding the Genworth life insurance benefits because, at the time of her requests in 2009 and 2010, she was not a participant in the Genworth life insurance plan, not a beneficiary of the plan, and not eligible to participate in the plan. Plaintiff's Genworth life insurance coverage terminated on April 15, 2007, following her termination from employment with WGL and a lapse in premium payments made to Genworth. After her reinstatement to inactive employment status with WGL, Plaintiff elected life insurance coverage, but she was not given the opportunity to select, and did not select, coverage with any specific insurer. After WGL's failed attempts to reinstate Plaintiff's Genworth coverage, WGL placed Plaintiff under the MetLife group life insurance plan for management employees who are ineligible for enrollment in the Genworth life insurance program. Defs.' Ex. 6. Under ERISA, the only life insurance information to which Plaintiff was entitled in 2009 was information about the MetLife plan of which she was a participant. *See* 29 U.S.C. § 1022(a) (requiring that participants and beneficiaries be provided with plan information); 29 U.S.C. § 1024(b)(4) (requiring that plan administrators provide SPDs

to plan participants and beneficiaries).[3] The alleged deficiency in Defendants' response to Plaintiff's requests for life insurance information fails to support her claim under section 502(c) of ERISA.

The only other deficiency Plaintiff alleges with respect to Defendants' response is the untimeliness of the documentation Defendants submitted on April 15, 2010. In their Memorandum in Support of their Motion for Summary Judgment, Defendants concede that their disclosure of the MetLife life insurance information was untimely. Defs.' Memo. Supp. Mot. Summ. J. at 12 ("The facts of this case demonstrate that upon Latimer's written request for plan documents for the group life insurance in which she was a participant, Defendant failed to timely respond. . . . Specifically, Latimer's requests for the group life insurance documents made in July and December 2009 were not responded to until April 15, 2010."). However, Defendants take an entirely different position in support of their more recently filed Motion for Relief from Judgment. Now, Defendants argue that they were under no obligation to provide any life insurance plan documents in response to Plaintiff's requests because she was not a participant in the plan for which she requested the documents, which, according to Defendants, was the Genworth plan. Defs.' Mem. Supp. Mot. for Relief from J. at 4-5.

The Court is not persuaded by Defendants' new argument that they committed no violation. It is apparent that Plaintiff expected to receive Genworth life insurance plan documents in response to her requests for life insurance SPDs. *See* Pl.'s Opp'n to Mot. for Summ. J. at 23

---

[3] There is evidence in the record establishing that Plaintiff had the opportunity to apply to Genworth for reinstatement of life insurance coverage until March 31, 2012. Defs.' Ex. 4, at Attach. D. However, Plaintiff does not argue that this opportunity for reinstatement made her "eligible" for coverage under section 3 of ERISA or created a "colorable claim to vested benefits" such that she would be considered a "participant" entitled to Genworth Financial plan information at the time of her requests for life insurance plan documents. *See Firestone Tire*, 489 U.S. at 117.

(arguing that Defendants' response was "incomplete" because "Defendant Zeigler never prepared or provided an SPD for the Genworth Financial life insurance plan"). However, Plaintiff did not specifically request Genworth plan documents, but rather requested "all Summary Plan Descriptions (SPDs) regarding management employee life insurance issued from January 2005 to present." Pl.'s Ex. C. Her mistaken belief that she was entitled to Genworth life insurance SPDs does not remove Defendants' obligation to meet the request as written and submitted to them. As Defendants admit in their brief in support of summary judgment, they were still obligated to provide SPDs on the "management employee life insurance" plan in which Plaintiff participated, which was the MetLife group life insurance plan for management employees ineligible for the Genworth plan.

Alternatively, Defendants argue, in connection with both their Motion for Summary Judgment and their Motion for Relief from Judgment, that Plaintiff was not harmed or prejudiced by any delay in Defendants' disclosure of life insurance plan information.[4] Defs.' Mem. Supp. Mot. for Summ. J. at 12; Defs.' Mem. Supp. Mot. for Relief from J. at 8-9. On this basis, Defendants ask the Court to impose no penalties or only minor penalties against Defendants for any delay in their disclosure of requested life insurance plan information. Defs.' Mem. Supp. Mot. for Summ. J. at 12.

The Court holds that Defendants' failure to comply with ERISA's disclosure requirements by timely responding to Plaintiffs' requests for life insurance plan information is a violation for which a penalty is warranted under section 502(c)(1) of ERISA. Defendants' failure to provide timely disclosure of life insurance information to Plaintiff in this case cannot be

---

[4] Plaintiff argues that "Defendant's delays in providing SPDs has resulted in [her] loss of valuable life insurance coverage," Pl.'s Opp'n to Mot. for Summ. J. at 28, but evidence in the record demonstrates that Plaintiff lost her life insurance coverage with Genworth Financial in 2007, Defs.' Ex. 4, Attach. B, long before her SPD requests. There is no other evidence of any loss, harm, or prejudice to Plaintiff as a result of the delay in receiving her life insurance SPD.

regarded as a mere oversight or inadvertence. Plaintiff was in regular contact, by telephone and mail, with Defendants, and she emphasized the importance of her life insurance coverage and Defendants' compliance with her requests in each contact with Defendants. *See* Pl.'s Ex. C ("I need to have the information requested above to make a rational decision concerning my coverage options."); Pl.'s Ex. D ("This matter is of significant importance to me and my family."). It is apparent from the record before the Court that the importance of the requested disclosure, in 2009, was compounded by Defendants' failure to provide appropriate plan documentation upon Plaintiff's enrollment in the MetLife group life insurance plan in 2007, as required under section 104 of ERISA. *See* 29 U.S.C. § 1024(b)(1)(A) (requiring plan administrator to "furnish to each participant . . . a copy of the summary plan description . . . within 90 days after he becomes a participant"). It was not until Plaintiff went through "the trouble and expense of engaging an attorney," *Davis*, 97 F.3d at 738, and having the attorney draft and submit a demand letter to Defendants, that Defendants finally provided responsive life insurance documents required under section 104. Pl.'s Ex. B, at Attach. 5. The Court notes that it took Defendants no more than three days to respond to the letter from Plaintiff's attorney, several months after Plaintiff's own written requests. Pl.'s Ex. B, Attach. 6. The record before the Court presents no mitigating circumstances that would excuse Defendants' failure to comply with Plaintiff's earlier requests.

The Court concludes that lack of any excuse for Defendants' failure to comply with section 104 and the "frustration, trouble, and expense" suffered by Plaintiff in seeking Defendants' compliance warrant the maximum penalty in this case, $110 per day from the dates a response was due for each request. *See Davis*, 97 F.3d at 738 (district court's discretion in imposing penalty for untimely disclosure under ERISA is guided by consideration of "prejudice

to the plaintiff and the nature of the administrator's conduct in responding to the participant's request"). *Compare Freitag v. Pan Am. World Airways*, 702 F. Supp. 128, 132 (E.D. Va. 1988) (imposing maximum penalty for defendant's failure to respond within "the appropriate response time," even in the absence of bad faith and where "overwhelming requests by employees for benefit information" provided excuse for defendant's slow response), *with Chaffin v. NiSource, Inc.*, 703 F. Supp. 2d 579, 599 (S.D.W.Va. 2010) (imposing penalty of only $50 per day delayed under section 502 of ERISA where employer did not "act[ ] out of malicious disregard to Plaintiff's request" but relied on the belief that the request had been satisfied by another party).

As directed by section 502(c)(1), the Court treats Defendants' failure to respond to each written request for life insurance plan documents made by Plaintiff "as a separate violation." 29 U.S.C. § 1132(c)(1).[5] Defendants did not provide responsive documents to written requests made on July 19, 2009, and December 8, 2009, until April 15, 2010. Thus, Defendants' response to Plaintiff's July 19, 2009, request was due on August 15, 2009, and was delayed beyond the 30-day period by 243 days. *See* 29 U.S.C. § 1132(c)(1) (providing 30-day period in which plan administrator may respond to requests in compliance with ERISA). Defendants' response to Plaintiff's December 8, 2009, request was due on January 7, 2010, and was delayed by 98 days. Thus, as to Count 7 of the Amended Complaint, the Court enters judgment in favor of Plaintiff

---

[5] The plain language of 29 U.S.C. § 1132(c)(1) directs the Court to treat each "fail[ure] or refus[al] to comply with a request for any information . . . as a separate violation." The Court notes that, in a number of cases where plaintiffs' made multiple requests for the same documents and defendants failed to make timely response to these multiple requests, courts have declined to treat each failure to make timely disclosure as a separate violation warranting a separate penalty. *See, e.g., Brooks,* 1 F. Supp. 2d 559, 569 (treating "the failure to respond to the written request [as] a continuation of the failure to respond to the [prior] oral request" without considering direction of section 502(c)(1) to treat separate violations separately); *The Utah Alcoholism Found. v. Battelle Pac. Nw. Labs.-Non-Bargaining Unit Emps.' Comprehensive Med. Benefits Plan,* 204 F. Supp. 2d 1295, 1308 (D. Utah 2002) (considering direction of section 502(c)(1) to treat separate violations separately but declining apply the provision because "to award penalties accordingly would be excessive"). Here, the Court does not find that following the direction of plain language of section 502(c)(1) would result in an excessive award under the circumstances of this case.

and imposes a total penalty in the amount of $37,510, $110 per day for 341 days, against Defendants.

### b. Count 10: Palliative Plan Administrator's Failure to Provide SPD upon Request

In Count 10 of her Amended Complaint, Plaintiff seeks recovery for Defendants' failure to provide her with a MetLife-insured "palliative plan" SPD upon request. The Court grants Defendants' Motion for Summary Judgment as to Count 10 because Plaintiff was not a participant in any MetLife "palliative plan" separate from her group life insurance coverage. Plaintiff fails to establish that she was a participant or beneficiary of any palliative plan administered by Defendants and insured by MetLife that was separate from her MetLife group life insurance plan. On Count 7, Plaintiff has already recovered for Defendants' failure to comply with ERISA disclosure requirements by making timely disclosure of MetLife life insurance information upon written request. Plaintiff is not entitled to recover for the same failure to disclose on a separate count. Thus, Defendants are entitled to judgment as a matter of law on Count 10, and the Court grants their Motion for Summary Judgment on this count.

### c. Count 3: LTD Plan Administrator's Failure to Provide a Sufficient SPD upon Request

In Count 3 of her Amended Complaint, Plaintiff seeks recovery for Defendants' failure to provide a sufficient LTD SPD upon request. The Court grants Defendants' Motion for Summary Judgment as to Count 3 because Plaintiff fails to present a genuine issue of material fact as to whether Defendants' response to Plaintiff's requests for long-term disability ("LTD") SPDs was timely and adequate under ERISA.

In 2006, Plaintiff was a participant in an LTD plan for which Defendant Zeigler was the plan administrator and Defendant WGL was the plan fiduciary responsible for reporting and disclosure. Plaintiff testifies in her affidavit that she made at least two requests for LTD SPDs to

Defendant WGL in 2006 and was provided with SPDs that did not reflect changes in the LTD plan that had occurred during the 2005 plan year or were incomplete. Pl.'s Ex. B, at ¶¶ 10-18. Changes made to the LTD plan in August 2005 included a change in service providers from UNUM to MetLife and changes in the level of benefits and the definition of "disability." *See* Pl.'s Ex. K at 4; Pl.'s Ex. T at 31, 34. Plaintiff provides copies of the SPDs she received via fax on March 28, September 6, and September 15, 2006. Pl.'s Exs. K, L, T, respectively. The March 2006 SPD identifies UNUM as the claims administrator and retains the outdated definition of "disability" and benefits formula. Pl.'s K, at 4. The September 2006 SPDs each only include ten to twelve pages of what is obviously a much larger document, given the page numbering. Pl.'s Exs. L, T. The document provided on September 15 includes the updated definition of "disability" and benefits formula. Pl.'s Ex. T, at 31, 34.

While it is apparent that the documents faxed to Plaintiff were sent by Defendants in response to some form of request from Plaintiff, there is no evidence in the record that Plaintiff's requests for LTD SPDs in 2006 were submitted in writing. Plaintiff has not testified or produced any evidence that her requests were submitted in writing. Section 104 of ERISA would not require Defendants to respond to Plaintiff's requests with the "latest updated" SPD unless those requests were in writing. *See* 29 U.S.C. § 1024(b)(4) ("administrator shall, upon *written* request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description") (emphasis added). Without evidence that her requests for LTD SPDs in 2006 were submitted to Defendants in writing, Plaintiff fails to present a genuine issue of material fact as to whether she is entitled to recover on Count 3. Therefore, Defendants are entitled to judgment as a matter of law on Count 3, and the Court grants their Motion for Summary Judgment as to this Count.

### d. Count 2: Heath Care Plan Administrator's Failure to Provide a Sufficient SPD upon Request

On Count 2 of the Amended Complaint, Plaintiff seeks recovery for Defendants' failure to provide her with a sufficient health care SPD upon request. The Court denies Defendants' Motion for Summary Judgment as to Count 2 because Plaintiff presents a genuine issue of material fact as to whether the health care SPD disclosed to her on April 15, 2010, was the latest updated SPD for the health care plan.

On March 30, 2010, Plaintiff was a participant in a health care plan for which Defendant Zeigler was the plan administrator and Defendant WGL was the plan fiduciary responsible for reporting and disclosure. On that date, Plaintiff submitted to Defendants Adams and Zeigler a written request for "a copy of all Summary Plan Descriptions (SPDs) regarding management (active and retired) employee medical benefits issued from January 2005 to the present." Pl.'s Ex. P. On April 5, 2010, Plaintiff received a health care SPD from Defendants indicating that it became effective as of January 1, 2006. Pl.'s Ex. G. On April 7, 2010, Plaintiff acknowledged receipt of the SPD and asked whether any changes in the plan had occurred since 2006, but Defendants failed to respond to this inquiry. Pl.'s Ex. B, at Attach. 8.

Plaintiff's affidavit and the email correspondences she has produced create a genuine issue of material fact as to whether Defendants were properly responsive to her requests for health care SPDs. It is unclear from the record before the Court whether the health care SPD provided to Plaintiff in response to her March 2010 request was the "latest updated" SPD, as required under ERISA § 104. 29 U.S.C. § 1024(b)(4); *see also* 29 C.F.R. § 2520.102-3 ("[SPD] must accurately reflect the contents of the plans as of the date not earlier than 120 days prior to the date such summary plan description is disclosed"). Thus, Defendants fail to establish that there is no genuine issue of material fact with respect to Plaintiff's claim that Defendants' failure

22

to provide the proper health care SPD upon request. For this reason, Defendants' Motion for Summary Judgment must be denied as to Count 2.

Plaintiff submitted another request for health care SPDs on February 7, 2011. Pl.'s Ex. Q. Defendants responded with health care plan documentation on March 1, 2011. Plaintiff disputes that Defendants' response was sufficient under ERISA's disclosure requirements, but this dispute is presented only in Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment without citation to record evidence. *See* Pl.'s Opp'n to Mot. for Summ. J. at 24. Thus, Plaintiff has failed to go beyond the pleadings to present evidence showing that there is a genuine issue for trial as to whether the Plan Document sent to Plaintiff in March 2011 was an adequate response to her February 2011 request under ERISA's disclosure requirements.

In conclusion, the Court finds that the evidence produced by Plaintiff presents a genuine issue of material fact as to whether Defendants made a proper response to Plaintiff's written requests for health care SPDs submitted in March and April of 2010. Thus, Defendants have failed to prove that they are entitled to judgment as a matter of law on Count 2, and their Motion for Summary Judgment is denied as to this Count.

### 2. Counts 4, 5, 8 and 9

The Court denies Defendants' Motion for Summary Judgment as to Count 4 of the Amended Complaint, and grants the motion as to Counts 5, 8, and 9.

Section 104(b) of ERISA requires benefits plan administrators to provide accurate, comprehensive, and clear plan information to all plan participants when they become participants and when the plan is changed or modified. 29 U.S.C. § 1024(b)(1). Plan administrators must provide a copy of an SPD to a participant within 90 days of their becoming a participant. *Id.* Additionally, plan administrators must provide to plan participants and beneficiaries descriptions

23

of material modifications to the plan and any changes in the information required to be included in the SPD. *Id. See also* 29 U.S.C. § 1022(b); 29 C.F.R. § 2520.102-3 (listing information SPD is required to contain). "[A] summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant." 29 U.S.C. § 1024(b)(1). DOL regulations permit an SPD that incorporates descriptions of such modifications to be submitted to participants in lieu of a separate summary of material modifications ("SMM"). 29 C.F.R. § 2520.104b–3(b).

Section 404 of ERISA imposes a "prudent man" standard of care on plan administrators in the discharge of their duties. 29 U.S.C. § 1104(a). The plan fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of providing benefits . . . and defraying reasonable expenses of administering the plan[,] and in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(A), (D). Breaches of fiduciary duties by plan fiduciaries are actionable under sections 409 and 502(a)(2) of ERISA. 29 U.S.C. § 1109; 29 U.S.C. § 1132(a)(2). Under section 409, the court may hold a plan fiduciary personally liable for breaching fiduciary duties and provide "equitable or remedial relief as the court may deem appropriate." 29 U.S.C. 1109(a).

"Congress intended ERISA's fiduciary responsibility provisions to codify the common law of trusts." *Griggs v. E.I. Dupont De Nemours & Co.*, 237 F.3d 371, 380 (4th Cir. 2001) (citing *Faircloth*, 91 F.3d at 656). "[R]ather than explicitly enumerating *all* of the powers and duties of [benefits plan] fiduciaries [in the statute], Congress invoked the common law of trusts to define the general scope of their authority and responsibility." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transport, Inc.*, 472 U.S. 559, 570 (1985). "The duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long

24

before the enactment of ERISA." *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C. Cir. 1990), *quoted in Griggs*, 237 F.3d at 380. The trustee "is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection." *Griggs*, 237 F.3d at 380 (quoting Restatement (Second) of Trusts § 173 cmt. d. (1959)); *see also Electro-Mechanical Corp. v. Ogan*, 9 F.3d 445, 451 (6th Cir. 1993) ("Under ERISA, plan fiduciaries may satisfy [their] obligation [of providing comprehensive plan information] by distributing amongst employees an explanatory booklet which adequately explains the plan and its terms.").

Many courts have recognized ERISA's requirement on plan administrators to provide participants with plan information as a duty owed by plan administrators as fiduciaries and failure to provide such information as a breach of fiduciary duties. *See, e.g., Lee v. Burkhart*, 991 F.2d 1004, 1011 (2d Cir. 2001). However, courts generally require participants asserting claims against plan fiduciaries for their failure to disclose accurate plan information outside of the section 502(c) context (which would require the claimant to have made a request for such information)[6] to show more than a mere technical violation of ERISA disclosure requirements. *See, e.g., Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851, 859 (4th Cir. 1994) (requiring plaintiff to show detrimental reliance or prejudice); *Aiken v. Policy Mgmt. Sys. Corp.*, 13 F.3d 138, 141–42 (4th Cir.1993) *(per curiam)* (same); *Burke v. Kodak Retirement Income Plan*, 336 F.3d 103, 111-13 (2d Cir. 2003) (requiring prejudice); *Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 113 (1st Cir. 2002) ("Technical violations of ERISA's notice provisions generally do not give rise to substantive remedies outside § 1132(c) unless there are some exceptional circumstances,

---

[6] Section 502(c)(1) of ERISA provides for specific civil penalties against plan administrators who fail or refuse to comply with requests for such information from plan participants within 30 days of the request. 29 U.S.C. § 1132(c)(1).

such as bad faith, active concealment, or fraud."); *Andersen v. Chrysler Corp.*, 99 F.3d 846, 859

(7th Cir. 1996) (same).[7] The U.S. Court of Appeals for the Fourth Circuit has determined that an

ERISA plaintiff asserting a claim for a plan fiduciary's failure to disclose a proper SPD "must

show some significant reliance upon, *or* possible prejudice flowing from, the lack of notice of an

accurate description of the terms of the plan." *Gable*, 35 F.3d at 859 (quoting *Aiken*, 13 F.3d at

141) (internal quotations omitted) (emphasis in original). "[C]ourts may not infer the existence of

detrimental reliance or prejudice without some affirmative evidence to that effect[.]" *Gable*, 35

F.3d at 859.

  In four separate counts, Plaintiff sets seeks recovery for Defendants' various breaches of

fiduciary duty under ERISA. The Court denies Defendants' Motion for Summary Judgment as to

Count 4 because there remains a genuine factual issue as to whether Defendants' failure to make

timely disclosure of material changes in WGL's LTD plan prejudiced Plaintiff. The Court grants

Defendants' Motion for Summary Judgment as to Count 5 because Plaintiff fails to present a

genuine issue of material fact as to whether her treatment by Defendants was inconsistent with

the treatment of other employees or representations made to Plaintiff with respect to Defendants'

administration of the LTD plan. The Court grants Defendants' Motion for Summary Judgment as

to Count 8 because Plaintiff fails to identify a duty owed by Defendant WGL to continue her

Genworth life insurance coverage during a time in which her employment was terminated. The

Court grants Defendants' Motion for Summary Judgment as to Count 9 because Plaintiff fails to

present a genuine issue of material fact as to whether she was harmed or prejudiced by

Defendants' failure to disclose information about her MetLife life insurance plan in accordance

with ERISA § 104(b)(1).

---

[7] *See also Anderson v. Chrysler Corp.*, 99 F.3d 846, 859 (7th Cir. 1996); *Watson v. Deaconesss Waltham Hosp.*, 298 F.3d 102, 113 (1st Cir. 2002); *Burke v. Kodak Retirement Income Plan*, 336 F.3d 103, 112 (2d Cir. 2003).

a. **Count 4: LTD Plan Administrator's Breach of Fiduciary Duty by Failing to Provide a Summary of Material Modifications within the Statutory Requirements**

In Count 4 of her Amended Complaint, Plaintiff seeks recovery for Defendants' breach of fiduciary duties in failing to provide Plaintiff with a LTD summary of material modifications ("SMM") as required under ERISA § 104. The Court denies Defendants' Motion for Summary Judgment as to Count 4 because Defendants fail to establish that they are entitled to judgment as a matter of law on this count. Defendants' disclosure of material changes to the LTD plan to Plaintiff was untimely, and this delay may have prejudiced Plaintiff.

In August 2005, a number of changes were made to the LTD plan administered by Defendants, including a change in service providers from UNUM to MetLife and a change in the definition of the term "disability." *See* Pl.'s Ex. K at 4; Pl.'s Ex. T at 31, 34. In February 2006, Plaintiff suffered an illness and began using STD benefits, which expired in August of that year. After requesting LTD plan information in March 2006, Plaintiff received portions of an UNUM LTD plan document that did not reflect the modifications made in 2005. ERISA's requirement that plan modifications be disclosed within "210 days after the end of the plan year in which the change is adopted" would require disclosure by July 29, 2006, for changes were adopted during the 2005 plan year. 29 U.S.C. § 1024(b)(1). Plaintiff did not receive notice of the modifications to the LTD plan by that date. As she prepared to make her application for LTD benefits in August and September of 2006, Plaintiff made further inquiries about the plan and received portions of a larger LTD plan document that reflected some of the 2005 changes but was incomplete. On November 7, 2006, Plaintiff received notice that her initial application for LTD benefits was denied.

Plaintiff avers that the delayed disclosure of the changes in the LTD plan delayed her appeal and ultimate approval for LTD benefits, which did not occur until May 2007. Pl.'s Ex. B,

at ¶ 28; Pl.'s Opp'n to Mot. for Summ. J. at 28. During the gap between her STD and LTD coverage, when Plaintiff failed to return to work, Plaintiff's employment was terminated in February 2007. Plaintiff's termination caused WGL to cease making life insurance premium payments to Genworth and, consequently, Plaintiff to lose her Genworth life insurance coverage.

On these facts, the Court holds that Defendants have failed to show that they are entitled to judgment as a matter of law on Count 4. Plaintiff may recover appropriate "equitable or remedial relief" under section 409 of ERISA if, at trial, she is able to show prejudice or detrimental reliance in connection with Defendants' failure to timely disclose material modifications in the LTD plan.

Defendants' arguments in favor of dismissal of Count 4 are without merit. First, Defendants' argument that the December 2006 disclosure was in compliance with ERISA because it was made before the close of the 2006 plan year is mistaken. *See* Defs.' Reply Supp. Mot. for Summ. J. at 7. A December 2006 disclosure would be several months beyond the time permitted under ERISA and DOL regulations. Second, Defendants' argue that Plaintiff fails to set forth a claim in her Amended Complaint for the plan administrator's failure to issue a timely SMM or SPD describing plan modifications as a breach of fiduciary duty. Defs.' Reply Supp. Mot. for Summ. J. at 7. This argument is clearly contradicted by Paragraphs 41 through 43 of the Amended Complaint, which allege the LTD plan administrator's failure to provide an SMM by the July 29, 2006 deadline imposed by ERISA. Thus, Defendants Motion for Summary Judgment as to Count 4 is not supported by the record before the Court and must be denied.

### b. Count 5: LTD Plan Administrator's Breach of Fiduciary Duty by Failing to Treat Participants Consistently

In Count 5 of her Amended Complaint, Plaintiff seeks recovery for the Defendants' breach of fiduciary duties in failing "to treat participants consistently" with respect to their

administration of the LTD plan. The Court GRANTS Defendants' Motion for Summary Judgment as to Count 5 because Plaintiff fails to present a genuine issue of material fact as to whether her treatment by Defendants was inconsistent with the treatment of other employees or representations made to Plaintiff with respect to Defendants' administration of the LTD plan.

Plaintiff alleges that, in 2006, the administration of the LTD plan changed in ways that were inconsistent with past communications from Defendant WGL about how the plan would be administered. Am. Compl. ¶ 47. She also alleges that Defendants "administered the Plan inconsistently among the Participants[.]" Am. Compl. ¶ 49. In opposition to Defendants' Motion for Summary Judgment, however, Plaintiff fails to set forth any admissible evidence of her inconsistent treatment by Defendants in connection with their administration of the LTD plan.

In response to Defendant Adams' testimony regarding WGL's practice of terminating employees who fail to return to work during the gap between STD leave and approval for LTD benefits, Defs.' Ex. 4 at ¶¶ 15-16, Plaintiff: (1) objects on the grounds that Adams lacks personal knowledge of WGL practices during the time Plaintiff exhausted her STD benefits and was terminated; and (2) asserts that the practices Adams describes "are not consistently applied to" similarly situated employees. Pl.'s Opp'n to Mot. for Summ. J. at 10-11.

The only evidence Plaintiff offers of such inconsistent treatment is her own affidavit and the affidavit of William Patillo, a former WGL manager responsible for employee benefits who left the company in 2004. Pl.'s Ex. B, at ¶¶ 22-23; Pl.'s Ex. H. In her affidavit, Plaintiff fails to state specific facts or cite evidence in the record showing that Defendants treated her differently with respect to the administration of the LTD plan than other employees. Having left WGL in 2004, Patillo cannot testify to how Defendants treated other employees who used or applied for LTD benefits during and around the time Plaintiff applied for and began using these benefits in

late 2006 and early 2007. *See* Fed. R. Evid. 602 (requiring witnesses to testify only to matters of which their personal knowledge is supported by evidence). Further, Plaintiff fails to present any evidence showing that Defendants administered benefits plans in ways that were inconsistent with the terms of those plans. The inconsistent treatment of which Plaintiff complains concerns WGL employment practices rather than its administration of any benefits plan.

Thus, Plaintiff fails to introduce admissible evidence to support her allegations of inconsistent treatment by Defendants sufficient to overcome Defendants' Motion for Summary Judgment. Count 5 of the Amended Complaint fails as a matter of law.

### c. Count 8: WGL's Breach of Fiduciary Duties by Failing to Continue Coverage Under Life Insurance

In Count 8 of her Amended Complaint, Plaintiff seeks recovery for Defendant WGL's breach of fiduciary duties in its failure to continue Plaintiff's life insurance coverage with Genworth. The Court GRANTS Defendants' Motion for Summary Judgment as to Count 8 because Plaintiff fails to identify a duty that was breached by Defendant WGL or present a genuine dispute of material fact as to whether Defendant WGL breached any duty owed to Plaintiff in connection with her life insurance coverage.

WGL ceased making premium payments for Plaintiff's Genworth life insurance coverage after terminating Plaintiff in February 2007. Defendants have produced two letters from Genworth addressed to Plaintiff advising her of her opportunity to continue coverage by making premium payments to Genworth. Plaintiff claims she never received these letters. Her Genworth life insurance coverage lapsed in April 2007 for non-payment of premiums. After she was approved for LTD benefits in May 2007, Plaintiff was reinstated to inactive employment status with WGL and elected life insurance coverage. Subsequently, Defendants attempted to re-enroll Plaintiff in her previous life insurance plan with Genworth. Defs.' Ex. 4, at Attach. B; Pl.'s Ex. J.

Genworth refused reinstatement of the policy because Plaintiff was not an active employee and qualified for LTD benefits. Defs.' Ex. 4, at ¶ 29; Pl.'s Ex. J. At that point, Defendants placed Plaintiff under a group life insurance plan with MetLife. Defs.' Ex. 4, at Attach. D.

Plaintiff fails to present evidence that the lapse in her insurance policy with Genworth was due to any breach in Defendants' fiduciary duties with respect to the life insurance plan. While it is apparent that Plaintiff's Genworth coverage would not have terminated if WGL continued making the premium payment after Plaintiff's removal from employment, Plaintiff fails to support her contention that WGL had a duty as fiduciary with respect to the life insurance plan to continue making premium payments after her termination. Plaintiff's termination was an employment action separate from the employer's role as benefits plan fiduciary under ERISA. Plaintiff has failed to identify any fiduciary duty held by Defendants that was breached by her removal from employment and the termination of her benefits upon removal. Thus, Plaintiff's claim for breach of fiduciary duties in Defendants' failure to continue her life insurance coverage with Genworth Financial fails as a matter of law.

### d. Count 9: Palliative Plan Administrator's Breach of Fiduciary Duty By Failing to Provide SPD by Operation of Law

In Count 9 of her Amended Complaint, Plaintiff seeks recovery for Defendants' breach of fiduciary duties in their failure to provide her with an SPD for her MetLife "palliative" plan by operation of law, presumably ERISA § 104(b)(1).[8] The Court grants Defendants' Motion for Summary Judgment as to Count 9 because Plaintiff fails to present a genuine issue of material fact as to whether she was harmed or prejudiced by Defendants' failure to disclose information about her MetLife life insurance plan in accordance with section 104(b)(1) of ERISA. Plaintiff was enrolled in the MetLife life insurance plan no later than July 2007, Defs.' Ex. 4, at Attach.

---

[8] In the absence of any MetLife "palliative plan," the Court will treat Plaintiff's reference to this plan as a reference to her MetLife life insurance coverage.

D, but she did not receive an SPD for the plan until April 15, 2010, Pl.'s Ex. U; Pl.'s Ex. B, at ¶ 38.) Defendants clearly exceeded the 90-day deadline for SPD disclosure imposed by ERISA. In Count 9 of her Amended Complaint, Plaintiff seeks recovery for Defendants' breach of fiduciary duties in failing to provide her with a palliative plan SPD by operation of law, presumably under ERISA § 104.

Defendants are entitled to summary judgment as to Count 9 because Plaintiff fails to present any evidence that she was harmed or prejudiced by Defendants' failure to disclose MetLife life insurance plan information upon her enrollment in the plan in summer 2007. Plaintiff argues that "Defendant's delays in providing SPDs has resulted in [her] loss of valuable life insurance coverage." Pl.'s Opp'n to Mot. for Summ. J. at 28. However, evidence in the record demonstrates that Plaintiff lost her life insurance coverage with Genworth before she was even enrolled in the MetLife plan. Defs.' Ex. 4, at Attach. B; Pl.'s Ex. J. A letter dated April 17, 2007, from Genworth to Plaintiff states that Plaintiff's Genworth life insurance coverage was terminated on April 15, 2007, due to non-payment of premiums. Defs.' Ex. 4, at Attach. B. Additionally, Plaintiff has produced an email by a Genworth representative from June 2007 that confirms that Plaintiff's Genworth coverage had terminated in April 2007. Pl.'s Ex. J. Following the termination of her Genworth coverage, Plaintiff did not elect life insurance benefits until June 4, 2007. Defs.' Ex. 4, at Attach. D.

Plaintiff maintains that she did not receive the letters from Genworth alerting her of the lapse of her coverage in April 2007, and that she was therefore deprived of the opportunity to prevent the termination of her coverage. Opp'n to Mot. for Summ. J. at 18-19. Even if Plaintiff did not receive Genworth's letters, the disclosure of MetLife life insurance plan information by Defendants within 90 days after Plaintiff's enrollment in the plan *in summer 2007* would not

have alerted her to the impending lapse of her Genworth benefits *in April 2007*, before she lost the opportunity to port her coverage.

Thus, there is no evidence of any loss, harm, or prejudice to Plaintiff precipitated by Defendants' failure to provide Plaintiff with a MetLife life insurance SPD, and no evidence of Plaintiff's detrimental reliance on Defendant's failure to disclose this information. Without such a showing, Plaintiff cannot recover for any violation of section 104(b)(1) by Defendants. Accordingly, the Court holds that Defendants are entitled to judgment as a matter of law as to Count 9 of the Amended Complaint.

## III.    CONCLUSION

The Court grants in part and denies in part Defendants' Motion for Summary Judgment. The Court grants the motion as to Counts 3, 5, 8, 9, and 10, and dismisses these counts as a matter of law. The Court denies the motion as to Counts 2, reserving for trial the question of whether Defendants' disclosure of a health care SPD in April 2010 met ERISA's requirement of providing the latest updated SPD upon request from participants. The Court also denies the motion as to Count 4, reserving for trial the question of whether Plaintiff was prejudiced by Defendants' failure to make timely disclosure of material changes to the LTD plan that occurred during the 2005 plan year. Finally, the Court enters judgment in favor of Plaintiff on Count 7 and imposes on Defendants the maximum statutory penalty of $37,150.

Entered this ___ day of June, 2012.

Alexandria, Virginia
6 / 7 / 12

_____
/s/
Gerald Bruce Lee
United States District Judge