IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED

JUN 1 1 2012

| | |
|---|---|
| LERON PATRICE LATIMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WASHINGTON GAS LIGHT | ) |
| COMPANY, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

Civil Action No. 1:11cv571 (GBL/TRJ)

## MEMORANDUM OPINION

THIS MATTER is before the Court on the two-day nonjury trial of Plaintiff Leron

Patrice Latimer's claims against Defendants Washington Gas Light Company ("WGL"), Long

Term Disability Plan-Management Employee Plan, William Zeigler, Luanne S. Gutermuth, and

Andrea Adams (collectively, "WGL defendants") for violations of the federal Employees

Retirement Income Security Act ("ERISA"). This case is about the failure of an employer, as a

benefits plan administrator and fiduciary with respect to those plans, to provide benefits plan

information to a retired management employee, as a participant in those plans.

The two counts in the Amended Complaint that remain in this case present four issues to

the Court. With respect to Count 2 of the Amended Complaint, the first issue is whether the plan

administrator of Plaintiff's medical plan provided timely disclosure of the latest updated

summary plan description ("SPD") upon Plaintiff's written request. The second issue is whether

an award of statutory penalties is appropriate for any failure by Defendants to meet these

1

disclosure requirements. The Court holds that Defendants WGL and Zeigler violated ERISA

disclosure requirements in failing to disclose an accurate and comprehensive medical plan SPD

within 30 days of Plaintiff's written request. The maximum award of statutory penalties is

appropriate, totaling $13,750, $110 per day for each day complete disclosure was delayed

beyond an initial 30-day period, because Defendants failed to show mitigating circumstances that

would excuse their failure to effect timely disclosure.

With respect to Count 4 of the Amended Complaint, the first issue is whether the plan

administrator of Plaintiff's long-term disability ("LTD") plan timely disclosed to Plaintiff, in

September 2007, material changes or modifications to the plan that were made in August 2005.

The second issue is whether Plaintiff may recover for any failure of Defendants to make timely

disclosure of material modifications to the plan. The Court holds that Defendants WGL and

Zeigler violated ERISA disclosure requirements in failing to disclose material modifications to

the LTD plan within 210 days of the end of the 2005 plan year, during which the changes were

implemented. However, Plaintiff may not recover for this violation because she failed to show

that she was prejudiced by the violation or that she detrimentally relied on the outdated LTD plan

information disclosed to her in March 2005.

Accordingly, the Court enters judgment in favor of Plaintiff on Count 2, with an award of

statutory penalties, and judgment in favor of Defendants on Count 4.


I.     **PROCEDURAL HISTORY**

On May 25, 2011, Plaintiff, by counsel, filed her Complaint in this Court against

Washington Gas Light Company ("WGL"), Long Term Disability Plan-Management Employee

Plan, William Zeigler, Luanne S. Gutermuth, Andrea Adams (collectively, "WGL defendants"),

Genworth Life and Annuity Insurance Company ("Genworth"), and MetLife Insurance Company ("MetLife"), alleging in ten counts various violations of disclosure requirements and breach of fiduciary duties under ERISA. MetLife was voluntarily dismissed, and an Amended Complaint was filed on July 27, 2011, with CareFirst Blue Cross Blue Shield ("CareFirst") now named as a defendant. On October 4, 2011, the Court granted Motions to Dismiss by Genworth, CareFirst, and the WGL defendants. Counts 1 and 6 against the WGL defendants and all claims against Genworth and CareFirst were dismissed with prejudice. On November 21, 2011, the Court granted Plaintiff's counsel leave to withdraw without substitution, and Plaintiff now proceeds *pro se*. On February 21, 2012, the Court granted in part and denied in part the WGL defendants' Motion for Summary Judgment, dismissing Counts 3, 5, 8, 9, and 10. The Court also entered judgment in favor of Plaintiff on Count 7 and awarded statutory penalties in the amount of $37,510.

Counts 2 and 4 remain against the WGL defendants:

1. In Count 2, Plaintiff seeks recovery for the WGL defendants' failure to provide her with a sufficient health care SPD upon request.

2. In Count 4, Plaintiff seeks recovery for the WGL defendants' breach of fiduciary duties in failing to provide her with an LTD summary of material modifications ("SMM") as required by ERISA.

On February 27 and February 28, 2012, the Court conducted a nonjury trial on these remaining counts.

## II.   STANDARD OF REVIEW

In a nonjury trial, the court must make specific findings of fact and separately state its

conclusions of law. Fed. R. Civ. P. 52(a)(1). The trial judge finds the facts, weighs the evidence,

and chooses from among conflicting inferences and conclusions, those of which he considers

most reasonable. *Penn-Texas Corp. v. Morse*, 242 F.2d 243, 247 (7th Cir. 1957) (citation and

internal quotation marks omitted). The trial judge may disregard the testimony of any witness

when satisfied that the witness is not telling the truth, or the testimony is inherently improbable

due to inaccuracy, uncertainty, interest, or bias. *Id.* (citation and internal quotation marks

omitted); *see also Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir.

1995) (stating that the fact-finder is in a better position to make judgments about the reliability of

some forms of evidence, including evaluation of the credibility of witnesses). It is the duty of the

trial judge sitting without a jury to appraise the testimony and demeanor of witnesses. *See*

*Burgess v. Farrell Lines, Inc.*, 335 F.2d 885, 889–90 (4th Cir. 1964).

To satisfy the demands of Rule 52(a), a trial court must do more than announce

statements of ultimate fact. *United States ex rel. Belcon, Inc. v. Sherman Const. Co.*, 800 F.2d

1321, 1324 (4th Cir. 1986) (citation omitted). The Court must "support its rulings by spelling out

the subordinate facts on which it relies." *Id.*

The language of Rule 52 has been construed

> not to require a court to make findings on all facts presented or to make
> detailed evidentiary findings; if the findings are sufficient to support the
> ultimate conclusion of the court, they are sufficient.  Nor is it necessary
> that the trial court make findings asserting the negative of each issue of
> fact raised.  It is sufficient if the special affirmative facts found by the
> court, construed as a whole, negative each rejected contention.   The
> ultimate test as to the adequacy of the findings will always be whether
> they are sufficiently comprehensive and pertinent to the issues to provide a
> basis for decision and whether they are supported by the evidence.

4

*Darter v. Greenville Cmty. Hotel Corp.*, 301 F.2d 70, 75 (4th Cir. 1962). This rule does not

"require that the trial court set out findings on all the myriad factual questions that arise in a

case." *Golf City, Inc. v. Wilson Sporting Goods, Co.*, 555 F.2d 426, 433 (5th Cir. 1977). As to

whether findings of fact are sufficient depends upon the particular facts of each individual case,

and no general rule can govern. *Darter*, 301 F.2d at 75.


## III.   FINDINGS OF FACT

The Court makes the following factual findings based upon the testimony of Leron

Patrice Latimer, Andrea Adams, and Janet Penz at trial; several documents admitted into

evidence; and undisputed facts submitted by the parties.

Leron Patrice Latimer was employed with Washington Gas Light Company ("WGL")

from September 1992 until her retirement in October 2008. As a WGL employee, Latimer was a

participant in several employee benefit plans, including medical, long-term disability ("LTD"),

and life insurance plans. WGL was the plan sponsor of these benefits plans and the plan

fiduciary responsible for reporting and disclosure. As Vice-President of Human Resources,

William Zeigler was the designated plan administrator of the benefits plans from February 1,

2004, through December 14, 2006. From December 15, 2006, through November 4, 2008, the

Health and Welfare Benefit Plan Committee was the plan administrator, and Zeigler was the plan

administrator again from November 5, 2008, through September 30, 2010. As Vice-President of

Human Resources, Luanne Gutermuth has served as the plan administrator from October 1,

2010, through the current date. Andrea Adams is WGL's Director of Human Resources

Regulation and Strategy, a position she has held since December 17, 2007. Test. of Andrea

Adams, Feb. 28, 2012 [hereinafter "Adams Test."]. Janet Penz is employee benefits counsel at

WGL and has been with the company for over eleven years, where she advises human resources

management and benefit plan fiduciaries. Test. of Janet Penz, Feb. 28, 2012 [hereinafter "Penz

Test."].

In or around August 2005, WGL implemented a change in service providers of its LTD

benefit plan from Unum to MetLife. Pl.'s Ex. 14. The change in service providers precipitated a

number of changes to the terms of the plan, Penz Test., including changes in the level of benefits

and eligibility requirements. Pl.'s Ex. 14. The MetLife plan provided a different definition of

"disability"[1] and specifically required participants to apply for social security benefits before

applying for benefits from the plan. *Id.* Due to an illness, Latimer applied for and received short-

term disability ("STD") benefits from MetLife and took a period of leave from February to

August 2006, at which point she applied for LTD benefits. Test. of Leron Patrice Latimer, Feb.

27, 2012 [hereinafter, "Latimer Test."].

---

[1] The definition of "disability" determines the types of sickness or injury that will be covered by the insurer. The Unum plan defines "disability" as an injury or sickness suffered by the participant that
> requires the regular care and attendance of a doctor and: (1) [t]he employee is
> unable to perform each of the material and substantial duties of his/her regular
> job held prior to such disability and you have 20% or more loss in your monthly
> earnings due to the same disability during the first 24 months of any one period
> of disability; and (2) [t]he employee is unable to perform any occupation for
> which he/she is, or may become, reasonably qualified by training, education, or
> experience after the first 24 months of payments.

Pl.'s Ex. 14. The MetLife plan defines "disability" as an injury or sickness for which the participant receives "Appropriate Care and Treatment," as defined by the plan, and the participant
> compl[ies] with the requirements of such treatment; and [due to such injury or
> sickness the participant is] unable to earn[] during the Elimination Period
> [following the day the participant becomes disabled, during which benefits are
> not paid,] and the next 24 months of Sickness or accidental injury, more than
> 80% of [her] Predisability Earnings at [her] Own Occupation from any employer
> in [her] Local Economy; and after such period, more than 60% of [her]
> Predisability Earnings from any employer in [her] Local Economy at any gainful
> occupation for which [she is] reasonably qualified taking into account [her]
> training, education and experience.

*Id.*

Latimer made at least two requests for summary plan descriptions ("SPDs") of the LTD plan to WGL in 2006. Latimer Test. In March 2006, she was provided with an SPD for the LTD plan that did not reflect the changes made to the plan during the 2005 plan year. Latimer asked human resources staff at WGL about MetLife's requirement that she apply for social security benefits before applying for LTD benefits. Latimer Test. In response, on September 6, 2006, WGL sent Plaintiff via fax portions of an SPD for the LTD plan that reflected some of the changes from August 2005 but were missing many pages. Pl.'s Ex. 14. This document included a provision describing the social security benefits application requirement. *Id.* Different portions of the SPD faxed to Latimer on September 15 included the updated definition of "disability" and benefits formula. *Id.* Latimer's initial application for LTD benefits was denied in November 2006. Latimer Test. In preparation for an appeal of this decision, Latimer requested additional plan information and received a complete and updated LTD SPD in December 2006. *Id.*; Pl.'s Ex. 15. MetLife approved Latimer's LTD application on appeal in May 2007 and retroactively applied coverage to August 12, 2006. Pl.'s Ex. 1. Latimer's LTD coverage ended on June 28, 2008, and she retired from WGL under the disability retirement provisions of the WGL pension plan in November 2008.

On March 30, 2010, Latimer emailed to Adams and Zeigler a request for "a copy of all Summary Plan Descriptions (SPDs) regarding management (active and retired) employee medical benefits issued from January 2005 to the present." Pl.'s Ex. 3. On April 5, 2010, an SPD for a CareFirst PPO Medical Plan was shipped to Latimer, indicating that it became effective on January 1, 2006. Pl.'s Ex. 11. In an email dated April 7, 2010, Latimer acknowledged receipt of the SPD and asked questions about whether there were other, more recent SPDs responsive to

her request. Pl.'s Ex. 4. The SPD disclosed to Latimer was the most recently prepared SPD for

the medical plan, Adams Test., but Adams did not respond to Latimer's inquiry.

On April 12, 2010, Latimer's attorney sent a letter to WGL demanding disclosure of the

requested plan information. Pl.'s Exs. 5, 6. WGL responded by sending Latimer medical and life

insurance plan documentation and other benefits-related documents via email on April 15, 2010.

Pl.'s Ex. 7. The email included the same CareFirst SPD disclosed on April 5. Pl.'s Ex. 11. On

April 23, 2010, Adams wrote to Latimer's attorney stating that, on April 15, she "emailed all

Summary Plan Descriptions, including the Carefirst and Metlife Summary Plan Description's

sent before." Pl.'s Ex. 8. Adams also stated that she would "be able to provide additional

information on or before May 7, 2010. *Id.* Adams did not respond to Latimer's concerns about

whether the plan information provided was up-to-date. Latimer Test. On July 8, 2010, Latimer's

attorney sent a letter to Janet Penz stating that she (Latimer's attorney) had not received the

information Adams indicated that she would send by May 7. Pl.'s Ex. 9. In the letter Latimer's

attorney stated further that Latimer noticed that her health care benefits had changed over the

previous five years, but Latimer "ha[d] not received updated plan documents." *Id.*

Latimer and her attorney were given the opportunity to inspect plan documents at WGL

on August 24, 2010. Defs.' Ex. 7; Pl.'s Ex. 10. Among the documents furnished by WGL was a

Summary of Material Modifications ("SMM") to the CareFirst PPO Medical Plan. Defs.' Ex. 7.

In a letter dated August 30, 2010, Latimer's attorney requested copies of the SMM and other

documents furnished on August 24, *id.*, and Latimer received the SMM via mail at some point

between September 1 and 3. Pl.'s Ex. 12; Latimer Test.[2] The SMM stated that the changes

described therein became effective on January 1, 2010, but, according to the same document, at

---

[2] Latimer testified to having received the SMM "in early September." A notice of correction by Adams dated September 10, 2010, indicated that the SMM had been sent during the week before that week. Pl.'s Ex. 12. This evidence suggests that the SMM was received by Latimer between September 1 and 3, 2010.

least some of the changes became effective much earlier. Pl.'s Ex. 12. For example, the SMM stated that a term covering same-sex domestic partners of employees became effective on January 1, 2007. *Id.* This term did not appear in the CareFirst SPD Latimer received in April 2010. Pl.'s Ex. 11. The SMM also provided a Schedule of Benefits containing different terms than those contained in the Schedule of Benefits provided in the SPD Latimer received in April 2010. For example, the Schedule of Benefits in the August 2010 SMM provided that the plan covered 80% of the allowed benefit for in-network inpatient and outpatient hospital facilities and physician services. Pl.'s Ex 12. The Schedule of Benefits in the SPD disclosed to Latimer in April 2010 provided that the plan covered 90% of the allowed benefit for the same facilities and services. Pl.'s Ex. 11.

On September 10, 2010, Adams sent Latimer a letter stating that the SMM contained an error, providing "the 2009 Pharmacy co-pay data instead of the 2010 Pharmacy co-pay data." Pl.'s Ex 12. "[T]he corrected notice with the proper Pharmacy copay information" was attached to the letter. *Id.* The corrected 2010 notice indicated higher copayment amounts for 90-day supplies of generic and brand name drugs that those provided in the SMM sent previously. *Id.*

## IV.   CONCLUSIONS OF LAW

### A. Count 2

In Count 2 of the Amended Complaint, Plaintiff seeks recovery from WGL for Defendants' failure to provide her with a sufficient health care SPD upon request. The Court holds that Defendants WGL and William Zeigler violated ERISA § 104(b)(4) when they failed to timely disclose to Plaintiff an accurate and comprehensive SPD for the CareFirst PPO medical plan upon Plaintiff's written request. The Court awards Plaintiff $13,750 in statutory penalties

under ERISA § 502(c)(1) for the delay in Defendants' disclosure of accurate and updated medical plan information.

### 1. Applicable ERISA Disclosure Requirement

With respect to Count 2 of the Amended Complaint, the first issue is whether the plan administrator of Plaintiff's medical plan provided timely disclosure of the latest updated summary plan description ("SPD") upon Plaintiff's written request. Section 104(b) of ERISA requires benefit plan administrators to provide accurate, comprehensive, and clear plan information to all plan participants. 29 U.S.C. § 1024(b) (2009). Section 404 imposes a "prudent man" standard of care on plan administrators in the discharge of their duties. 29 U.S.C. § 1104(a). The plan fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of providing benefits . . . and defraying reasonable expenses of administering the plan[,] and in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(A), (D). "Congress intended ERISA's fiduciary responsibility provisions to codify the common law of trusts." *Griggs v. E.I. Dupont De Nemours & Co.*, 237 F.3d 371, 380 (4th Cir. 2001); *see also Faircloth*, 91 F.3d at 656. "The duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA." *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C. Cir. 1990), *quoted in Griggs*, 237 F.3d at 380. The trustee "is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection." *Griggs*, 237 F.3d at 380 (quoting Restatement (Second) of Trusts § 173 cmt. d. (1959)).

Section 104(b)(4) specifically requires benefit plan administrators to provide "a copy of the latest updated summary plan description" ("SPD") upon written request from a participant. 29 U.S.C. § 1024(b)(4). An SPD includes a description or summary of the benefits provided under the plan. 29 U.S.C. § 1022. ERISA requires that the SPD "be sufficiently accurate and comprehensive to reasonably apprise [plan] participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). *See also* 29 U.S.C. § 1022(b); 29 C.F.R. § 2520.102-3 (listing information SPD is required to contain). United States Department of Labor ("DOL") regulations implementing ERISA require the SPD to include "[t]he plan's requirements respecting eligibility for participation and for benefits" as well as "a description or summary of the benefits." 29 C.F.R. § 2520.102-3(j) (2011).[3] "The [SPD] must accurately reflect the contents of the plans as of the date not earlier than 120 days prior to the date such summary plan description is disclosed." 29 C.F.R. § 2520.102-3.

In this case, Defendants failed to make timely disclosure of an accurate and up-to-date SPD upon Plaintiff's written requests in March and April 2010. In response to Plaintiff's first request, on April 5, Adams disclosed to Plaintiff an SPD that became effective in August 2006. The SMMs and notice of correction produced at trial show, and Adams's testimony confirmed, that material modifications had been made to the medical plan since 2006. Specifically, on January 1, 2007, a new eligibility provision in the plan became effective that made covered

---

[3] Specifically, the SPD of a group health plan must include descriptions of "the rights and obligations of participants and beneficiaries with respect to continuation coverage." 29 C.F.R. § 2520.102-3(o). The SPD must also include "any cost-sharing provisions, including premiums, deductibles, coinsurance, and copayment amounts for which the participant or beneficiary will be responsible, [and] any annual or lifetime caps or other limits on benefits under the plan[.]" 29 C.F.R. § 2520.102-3(j)(3). However, "[i]n the case of a welfare plan providing extensive schedules of benefits (a group health plan, for example)," DOL regulations require "only a general description of such benefits . . . if reference is made to detailed schedules of benefits which are available without cost to any participant or beneficiary who so requests." 29 C.F.R. § 2520.102-3(j)(2).

employees' same-sex domestic partners eligible for coverage. This term did not appear in the SPD disclosed to Plaintiff on April 5, 2010, but was a material change in the plan that occurred well over 120 days prior to WGL's disclosure of the 2006 SPD on April 5, 2010.

At trial, Adams testified that there had been other changes to the plan after August 2006 and before 120 days prior to April 5, 2010, but no SMM was issued to disclose these changes. It is clear from a comparison between the benefit schedules applicable to retired management employees in the 2006 SPD disclosed in April 2010 and the SMM dated August 2010 that some terms in the schedules changed at some point between August 2006 and August 2010. However, it is unclear exactly when these changes occurred and became effective. As Plaintiff testified at trial, proof of material modifications to benefit plans is difficult when plan administrators fail to meet their obligations under ERISA by making timely disclosure of such modifications. Adams's testimony and the August 2007 modification noted in the August 2010 SMM prove that the 2006 medical plan SPD was not accurate or comprehensive in April 2010 and therefore failed to meet the requirements of 29 U.S.C. § 1022(a) and 29 C.F.R. § 2520.102-3. Outdated information could not reasonably apprise Plaintiff of her rights and obligations under the plan with respect to benefits, eligibility, and other material terms for which ERISA and DOL regulations require disclosure in SPDs. *See* 29 U.S.C. § 1022; 29 C.F.R. § 2520.102-3.

Having noticed changes in her medical benefits in connection with obtaining medical services, Plaintiff, after receiving the 2006 medical plan SPD, asked Adams whether there was updated plan information. Adams failed to respond directly to this inquiry, but, as Plaintiff's attorney began contacting WGL to effect disclosure, Adams promised to disclose "more information" by May 7. Updated plan information that would cure the inaccuracies in the 2006 SPD was not disclosed to Plaintiff until she and her attorney were given the opportunity to

inspect plan documents at WGL on August 24, 2010, and reviewed a medical plan SMM there. A copy of this document was finally sent to Plaintiff in early September, in response to a letter from her attorney to Penz on August 30.

It is not entirely clear that Adams, Penz, or anyone at WGL ever intended to cure the deficiencies in the April 2010 disclosure until Latimer and her attorney were able to visit WGL and identify a document appropriately responsive to Latimer's earlier requests. ERISA does not require plan participants to hire attorneys or to find for themselves what specific documents contain the accurate and up-to-date plan information they seek. The statute does not require plan participants to pore over a store of benefit plan documents at their workplace before the plan administrator's duty to provide them with copies of such documents is triggered. Defendants WGL, as the plan fiduciary responsible for disclosure, and Zeigler, as the plan administrator, had the duty to provide Plaintiff with copies of documents containing accurate and comprehensive plan information when she requested these documents on March 30, 2010. In failing to timely provide these documents, Defendants WGL and Zeigler violated ERISA § 104(b)(4).

### 2. Statutory Penalties

The second issue respecting Count 2 of the Amended Complaint is whether an award of statutory penalties is appropriate for Defendants' failure to meet the requirements of ERISA § 104(b)(4). Section 502(c)(1) of ERISA provides for specific civil penalties against plan administrators who fail or refuse to comply with written requests for such information from plan participants within 30 days of the request. 29 U.S.C. § 1132(c)(1). The court may impose a penalty in the amount of up to $110 a day from the date of such failure or refusal. *Id.*; *see also* 29 C.F.R. § 2575.502c-1 (increasing penalty from $100 to $110 per day delayed). "[T]he amount of the statutory penalty to be imposed, if any, is left to the discretion of the court." *Brooks v.*

13

*Metrica, Inc.*, 1 F. Supp. 2d 559, 568 (E.D. Va. 1998) (citing *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 (4th Cir. 1996)).

"Two factors generally guide [the] district court's discretion: prejudice to the plaintiff and the nature of the administrator's conduct in responding to the participant's request." *Davis v. Featherstone*, 97 F.3d 734, 738 (4th Cir. 1996). Even prejudicial harms such as "frustration, trouble, and expense," including "the trouble and expense of engaging an attorney" to induce the defendant's compliance, are "relevant factors for a district court to consider in deciding whether to impose a penalty." *Davis*, 97 F.3d at 738, *quoted in Brooks*, 1 F. Supp. 2d at 569. However, "[t]he purpose of § 502(c)(1) is not to compensate participants for injuries, but to punish noncompliance with ERISA[,]" *Faircloth*, 91 F.3d at 659, and "to provide plan administrators with an incentive to meet requests for information in a timely fashion," *Davis*, 97 F.3d at 738, citing *Porcellini v. Strassheim Printing Co., Inc.*, 578 F. Supp. 605, 614 (E.D. Pa. 1983). For this reason, prejudice to the participant requesting plan documents, while "a pertinent factor for the district court to consider, . . . is not a prerequisite to imposing a penalty." *Davis*, 97 F.3d at 738; *see also Faircloth*, 91 F.3d at 659. In *Porcellini v. Strassheim Printing Co.*, 578 F. Supp. 605, 614 (E.D. Pa. 1983), the United States District Court for the Eastern District of Pennsylvania determined that, given the purpose of section 502(c) in inducing compliance, "the *primary* focus of a court in assessing damages under that section should be the conduct of the administrator upon whom the liability is personally imposed." 578 F. Supp. at 614 (emphasis added). Thus, "to recover statutory damages a plaintiff need only show that the defendant did not comply with the statute." *Brooks*, 1 F. Supp. 2d at 568.

In this case, the Court holds that statutory penalties are warranted for WGL and Zeigler's delayed disclosure of accurate and updated medical plan information. WGL's disclosure of

14

accurate medical plan information in August and September 2010 after Plaintiff submitted a written request for such information in March and April 2010 was untimely under ERISA § 502(c)(1). ERISA gives plan administrators 30 days to respond to plan participants' requests for SPDs, 29 U.S.C. § 1132(c)(1), which must be "accurate and comprehensive," 29 U.S.C. § 1022(a). The SPD provided to Plaintiff on April 5 and again on April 15, 2010, was not properly responsive to Plaintiff's request because it did not "accurately reflect the contents of the plans as of the date not earlier than 120 days prior to the date such summary plan description [was] disclosed." 29 C.F.R. § 2520.102-3. Disclosure of an accurate and comprehensive SPD, or at least plan information sufficient to cure the deficiencies in the SPD provided on April 5, would have been due to Plaintiff on April 29, 2010. However, an SMM curing the failure of the April 5 disclosure was provided to Plaintiff no sooner than September 1, 2010.[4]

Defendants' failure to provide timely disclosure of medical plan information to Plaintiff in this case cannot be excused as a mere oversight or inadvertence. After Adams's disclosure of the 2006 SPD on April 5, 2012, Plaintiff promptly alerted Adams that the SPD was likely outdated by acknowledging receipt of the SPD but asking for more up-to-date plan information. Even after Plaintiff went through "the trouble and expense of engaging an attorney," *Davis*, 97 F.3d at 738, and having the attorney draft and submit a demand letter on April 12, 2010, WGL failed to timely respond with an updated SPD or SMM. At trial, Defendants failed to present evidence of any mitigating circumstances that would excuse their failure to comply with Plaintiff's requests for medical plan information within the 30-day period allowed by ERISA.

---

[4] The exact dates on which WGL sent and Plaintiff received a copy of the August 2010 SMM are uncertain. Plaintiff testified that she received the SMM in early September, and, according to Adams's correction notice, the SMM was sent during the week before the week of September 10, 2010, suggesting a date between September 1 and September 3, 2010.

The Court holds that the lack of any excuse for Defendants' failure to comply with

ERISA § 104 and the "frustration, trouble, and expense" suffered by Plaintiff in seeking

Defendants' compliance warrant the maximum penalty in this case, $110 per day from the date a

response was due for Plaintiff's March 10, 2010, request. *See Davis*, 97 F.3d at 738 (district

court's use of discretion in imposing penalty for untimely disclosure under ERISA is guided by

consideration of "prejudice to the plaintiff and the nature of the administrator's conduct in

responding to the participant's request"). *Compare Freitag v. Pan Am. World Airways*, 702 F.

Supp. 128, 132 (E.D. Va. 1988) (imposing maximum penalty for defendant's failure to provide a

timely response, even in the absence of bad faith and where "overwhelming requests by

employees for benefit information" provided an excuse for defendant's slow response), *with*

*Chaffin v. NiSource, Inc.*, 703 F. Supp. 2d 579, 599 (S.D.W.Va. 2010) (imposing penalty of only

$50 per day delayed under section 502 of ERISA where employer did not "act[ ] out of malicious

disregard to Plaintiff's request" but relied on the belief that the request had been satisfied by

another party). Defendants' response to Plaintiff's request was due on April 29, 2010, and was

delayed by 125 days. Thus, as to Count 2 of the Amended Complaint, the Court enters judgment

in favor of Plaintiff and imposes a total penalty in the amount of $13,750, $110 per day for 125

days, against Defendants.

## B. Count 4

In Count 4, Plaintiff seeks recovery for Defendants' breach of fiduciary duties in failing

to provide her with a LTD summary of material modifications ("SMM") as required by ERISA.

The Court holds that Defendants WGL and Zeigler violated ERISA § 104(b)(1) by failing to

disclose to Plaintiff material modifications to her LTD plan within 210 days after the end of the

2005 plan year, the year in which the changes were implemented. However, Plaintiff failed to

demonstrate prejudice or detrimental reliance in connection with Defendants' failure to timely disclose an SMM for changes in the LTD plan and is therefore not entitled to monetary relief from Defendants' violation.

### 1. Applicable ERISA Disclosure Requirement

With respect to Count 4 of the Amended Complaint, the first issue is whether the plan administrator of Plaintiff's LTD plan timely disclosed to Plaintiff, in September 2007, material changes to the plan that became effective in August 2005. Section 104(b)(1) of ERISA requires benefits plan administrators to provide accurate, comprehensive, and clear plan information to all plan participants when they become participants and when the plan is changed or modified. 29 U.S.C. § 1024(b)(1). Plan administrators must provide a copy of an SPD to a participant within 90 days of their becoming a participant. *Id.* Additionally, plan administrators must provide to plan participants and beneficiaries descriptions of material modifications to the plan and any changes in the information required to be included in the SPD. *Id.*; *see also* 29 U.S.C. § 1022(b); 29 C.F.R. § 2520.102-3 (listing information SPD is required to contain). "[A] summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant." 29 U.S.C. § 1024(b)(1). DOL regulations permit an SPD that incorporates descriptions of such modifications to be submitted to participants in lieu of a separate summary of material modifications ("SMM"). 29 C.F.R. § 2520.104b–3(b).

Many courts have recognized ERISA's requirement on plan administrators to provide participants with such plan information as a duty owed by plan administrators as fiduciaries and failure to provide such information as a breach of fiduciary duties. *See, e.g., Lee v. Burkhart*, 991 F.2d 1004, 1011 (2d Cir. 2001). Breaches of fiduciary duties by plan fiduciaries are actionable

under sections 409 and 502(a)(2) of ERISA. 29 U.S.C. § 1109; 29 U.S.C. § 1132(a)(2). Under

section 409, the court may hold a plan fiduciary personally liable for breaching fiduciary duties

and provide "equitable or remedial relief as the court may deem appropriate." 29 U.S.C. 1109(a).

Here, Defendants WGL and Zeigler clearly failed to make timely disclosure of material

modifications made to Plaintiff's LTD plan in August 2005. The change in service providers

from Unum to MetLife in August 2005 precipitated material changes in the LTD plan that

included changes in the definition of "disability" and the benefits formula. At trial, Plaintiff also

pointed out a requirement in portions of the MetLife SPD disclosed to her on September 6, 2006,

that applicants for LTD benefits first apply social security benefits, which did not appear in the

previous Unum SPD disclosed to her in March. Under ERISA § 104(b)(1), WGL or Zeigler were

required to provide an SMM, or SPD encompassing the plan changes, see 29 C.F.R. §

2520.104b–3(b), to Plaintiff and other participants no later than 210 days after the end of the

2005 plan year, which was July 29, 2006. 29 U.S.C. § 1024(b)(1). Plaintiff did not begin to

receive LTD plan materials with updated information until September 2006. According to her

testimony, she had even specifically requested from WGL LTD plan information in or around

March 2006, which provided WGL with the opportunity to disclose the material changes in the

LTD plan within the time permitted under section 104(b)(1). Instead, WGL disclosed an

outdated Unum LTD plan SPD.[5] Thus, Defendants WGL and Zeigler clearly failed to meet their

obligations under section 104(b)(1) to timely disclose material modifications to the LTD plan.

---

[5] Plaintiff sought recovery of section 502(c)(1) penalties for Defendants' failure to disclose a sufficient SPD for the LTD plan upon request in Count 3 of her Amended Complaint. The Court granted summary judgment to Defendants on that count because Plaintiff failed to offer evidence that any such request for the SPD was made in writing. See 29 U.S.C. § 1132(c)(1) (plan administrator who fails or refuses to disclose plan information upon participant's request may, at court's discretion, be liable statutory penalties); 29 U.S.C. § 1024(b)(4) (2009) (requiring benefits plan administrators to provide "a copy of the latest updated summary plan description" upon *written* request from a participant) (emphasis added).

## 2. Damages

The second issue respecting Count 4 is whether Plaintiff may recover for Defendants' failure to timely disclose material modifications to the LTD plan. Courts generally require participants asserting claims against plan fiduciaries for their failure to disclose accurate plan information outside of the section 502(c) context (which would require the claimant to have made a request for such information)[6] to show more than a mere technical violation of ERISA disclosure requirements. *See, e.g., Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851, 859 (4th Cir. 1994) (requiring plaintiff to show detrimental reliance or prejudice); *Aiken v. Policy Mgmt. Sys. Corp.*, 13 F.3d 138, 141–42 (4th Cir.1993) (*per curiam*) (same); *Burke v. Kodak Retirement Income Plan*, 336 F.3d 103, 111-13 (2d Cir. 2003) (requiring prejudice); *Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 113 (1st Cir. 2002) ("Technical violations of ERISA's notice provisions generally do not give rise to substantive remedies outside § 1132(c) unless there are some exceptional circumstances, such as bad faith, active concealment, or fraud."); *Andersen v. Chrysler Corp.*, 99 F.3d 846, 859 (7th Cir. 1996) (same). The U.S. Court of Appeals for the Fourth Circuit has determined that an ERISA plaintiff asserting a claim for a plan fiduciary's failure to disclose a proper SPD "must show some significant reliance upon, *or* possible prejudice flowing from, the lack of notice of an accurate description of the terms of the plan." *Gable*, 35 F.3d at 859 (quoting *Aiken*, 13 F.3d at 141) (internal quotations omitted) (emphasis in original). "[C]ourts may not infer the existence of detrimental reliance or prejudice without some affirmative evidence to that effect[.]" *Gable*, 35 F.3d at 859.

---

[6] Section 502(c)(1) of ERISA provides for specific civil penalties against plan administrators who fail or refuse to comply with requests for such information from plan participants within 30 days of the request. 29 U.S.C. § 1132(c)(1).

Here, Plaintiff failed to present affirmative evidence of detrimental reliance or prejudice in connection with Defendants' failure to disclose an SMM for her LTD plan. While it is clear that WGL and Zeigler failed to meet the requirement of section 104(b)(1) to timely disclose material changes in the LTD plan, Plaintiff is required to show prejudice or detrimental reliance in order to recover for this failure as a breach of fiduciary duties. *See Gable*, 35 F.3d at 859; *Aiken,* 13 F.3d at 141-42.

In her testimony at trial, Plaintiff cited as harms resulting from the Defendants' violations of ERISA in Count 4 "not being able to get sufficient information to proceed effectively and efficiently in [her] benefit claims . . . and that the information was confusing, misleading, and not readily understood . . . ." It is not entirely clear from Plaintiff's testimony, but she is likely referring to her initial application and appeal for LTD benefits in 2006 and 2007. At earlier points of her testimony, Plaintiff described the confusion she experienced during her initial application for LTD benefits. Specifically, Plaintiff testified to her confusion about whether she was required to apply for social security benefits before applying for LTD benefits from MetLife. She also showed how the change in definition of "disability" from the Unum plan to the MetLife plan "broadens the scope of what an applicant has to demonstrate in order to qualify for long-term disability . . . ."

However, Plaintiff did not testify that her confusion about what was required for her LTD benefits application caused her initial application to be denied or any other actual harm. Since Plaintiff was applying for LTD benefits during the time she had difficulty obtaining accurate information from WGL about eligibility requirements for LTD benefits, it is conceivable that WGL's failure to provide this information negatively impacted Plaintiff's initial application, which was denied in November 2007. However, without evidence to that effect, the Court cannot

20

draw the inference that it was more likely than not that MetLife's denial of Plaintiff's LTD benefits application was caused by WGL's failure to disclosure updated LTD plan information by July 29, 2007. Thus, Plaintiff has failed to show the requisite prejudice or detrimental reliance for entitlement to monetary relief from Defendants' violation of ERISA § 104(b)(1).

## V.   CONCLUSION

The Court enters judgment in favor of Plaintiff on Count 2 and in favor of Defendants on Count 4. On Count 2, the Court awards Plaintiff a judgment of $13,750 in statutory penalties against the Defendants WGL and William Zeigler for the 125-day delay in their disclosure of accurate and comprehensive summary plan information in response to Plaintiff's written request. With respect to Count 4, Plaintiff failed to present evidence of any prejudice she suffered as a result of Defendants' failure to timely disclose material changes in her LTD plan or her detrimental reliance on the inaccurate LTD plan information disclosed to her. For this reason, the Court enters judgment in favor of Defendants WGL, Long Term Disability Plan-Management Employee Plan, William Zeigler, Luanne S. Gutermuth, and Andrea Adams on Count 4.

The Clerk is directed to forward a copy of this Order to Plaintiff and to counsel of record. Entered this _11th_ day of June, 2012.

Alexandria, Virginia
6 / 11 / 12

_/s/_
Gerald Bruce Lee
United States District Judge